**TRINITY STEEL COMPANY, Inc.,**
Appellant,

v.

**MODERN GAS SALES & SERVICE CO., Inc., Appellee.**

No. 7645.

Court of Civil Appeals of Texas.

Texarkana.

June 29, 1965.

Rehearing Denied July 20, 1965.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

James E. Coleman, Jr., Carrington, Johnson & Stephens, Dallas, for appellee.

FANNING, Justice.

Appellant, Trinity Steel Company, Inc., a Texas Corporation, with its principal office and place of business in Dallas, Dallas County, Texas, filed suit in a District Court of Dallas County, Texas, on a sworn account, against appellee, Modern Gas Sales & Service Co., Inc., a foreign corporation, with its principal office and place of business in Lakewood, Ocean County, New Jersey, for $15,000, the purchase price of a propane transport trailer, purchased by appellee from appellant. Appellant served process on appellee by serving the Secretary of State of Texas, pursuant to Art. 2031b, Vernon's Ann.Tex.Civ.St. Appellee, pursuant to Rule 120a, Texas Rules of Civil Procedure, filed its special appearance objecting to the trial court's in personam jurisdiction over appellee on the ground that appellee was not amenable to process issued by a Texas court. The trial court, after hearing the evidence adduced and the stipulations made, sustained appellee's special appearance, discharged appellee from the cause, and decreed that appellant take nothing by its action. Appellant has appealed.

Appellant on appeal presents a single point wherein it contends that the trial court erred in sustaining appellee's special appearance because appellee was amenable to process issued by Texas courts under Art. 2031b, V.A.T.C.S. Appellee by its single counter point contends that the trial court properly sustained appellee's motion to the jurisdiction in that appellee was not amenable to service of process under Art. 2031b, V.A.T.C.S., because it had not had the "minimum contact" with the forum State of Texas so as to satisfy the due process requirements of the 14th amendment to the United States Constitution.

For a comprehensive analysis of Art. 2031b, V.A.T.C.S., and Rule 120a, T.R.C.P., see Thode, In Personam Jurisdiction; Art. 2031b, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Texas Law Review 279, 303–310 (1964). Also in this connection see Wilson, In Personam Jurisdiction over Non-Residents; An Invitation and a Proposal, 9 Baylor Law Review 363 (1957); Counts, More on Rule 120a, 28 Texas Bar Journal, 95, 96, (Feb. 1965).

■ From the evolution of service on non-resident defendants in *in personam* actions from Pennoyer v. Neff, (1877), 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565, through International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L. Ed.2d 1283, we think it can be said that it is now the law that it is essential in each case that there be some act by which the defendant purposefully avails (himself) of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and that he have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice, and furthermore consideration must be given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties and the basic equities of the parties.

■ The factors to be considered in determining whether or not there have been minimum contacts with the forum are stated in Hearne v. Dow-Badische Chemical Company, 224 F.Supp. 90 (S.D.Tex. 1963) as follows:

"(1) The nature and character of the business;

(2) The number and type of activities within the forum;

(3) Whether such activities give rise to the cause of action;

(4) Whether the forum has some special interest in granting relief; and

(5) The relative convenience of the parties."

We quote from Professor Thode's article, supra, 42 Tex. Law Review, p. 301, 2, 3, in part, as follows:

"The McGee decision was thought by some writers to establish the proposition that suit based on any business contact with the state of the forum would be sufficient to support personal jurisdiction over a non-resident defendant, assuming proper out-of-state notice. The 1958 decision of the Supreme Court of the United States in Hanson v. Denckla demonstrates that such an interpretation is too broad. In Denckla it was pointed out that McGee involved an insurance contract, and that the business of insurance, like that of control of motor vehicle traffic on the highways and the selling of securities, is something that falls within the permissible scope of regulation under the state's police power. The defendant in Denckla was a corporate Delaware trustee who was being sued in Florida. The defendant's contacts with Florida consisted of correspondence which primarily involved remitting trust income to the donor who had moved to Florida after setting up the trust, and in making changes in instruments at the request of the donor in Florida. The Supreme Court held that there were not sufficient contacts for the Florida court to obtain jurisdiction over the nonresident trustee by out-of-state service. The Court stated:

" 'The unilateral activity of those who claim some relationship with a

nonresident cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws * *'

"The Supreme Court also issued general words of caution:

"'It is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1 L.Ed.2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him.'

\*    \*    \*    \*    \*    \*

"In summation, there are limits upon the power of a state to bring a nonresident defendant-individual or corporate-into the courts of that state on the basis of out-of-state service. 'Doing business' is still the test for state regulation, but the limits on jurisdiction for the purpose of suing a nonresident are greatly enlarged. These limits are determined by the 'minimum contacts' test, and the contacts cannot be merely fortuitous, but must be purposefully made by the defendant. Further, the litigation must grow out of these contacts, and notice must be properly given to defendant."

In McKanna v. Edgar, Tex.Sup.Ct., 388 S.W.2d 927, (1965) it was stated in part as follows:

"Some time before this proceeding was instituted, Eileen Ann McKanna, a resident of California, executed and delivered a note to Joe Edgar, Jr., of Austin, Texas. The note was payable in Austin. McKanna did not pay the note when due, and Edgar brought suit. Edgar had a problem in obtaining personal service of process because McKanna lived in California. There is a Texas statute which provides for substituted service upon corporations and individuals doing business in Texas, Article 2031b. Edgar served, or attempted to serve, McKanna by serving the Secretary of State of the State of Texas under that statute. The Secretary of State in turn forwarded the citation to McKanna. McKanna did not appear in the Texas court in person or by attorney. Article 2249a. Based on that service, Edgar obtained a judgment by default against McKanna on the note. McKanna thereafter instituted this action, within the time allowed, by way of writ of error to the Court of Civil Appeals to set aside the default judgment based on the substituted service. Articles 2249 and 2255. The Court of Civil Appeals refused to set aside the judgment. 380 S.W.2d 889 (1964).

"McKanna, the nonresident defendant, contends that the judgment should be set aside for lack of jurisdiction over her person because (1) the substituted service of citation upon her was not made in accordance with the provisions of Article 2031b in that the record fails to show the existence of the conditions which, under the statute, are a prerequisite to service on her by serving the Secretary of State; and (2) Article 2031b is unconstitutional if it confers jurisdiction under the facts and circumstances of this case.

"We reverse both judgments below on the basis of McKanna's first contention. It is therefore unnecessary to consider the constitutional question. * * *

"Section 3 of Article 2031b, here to be construed, reads in part as follows:

"'Any * * * non-resident natural person that engages in business in this State * * * and does not maintain a place of regular business in this State or a designated agent upon whom service may be made * * *, the act or acts of engaging in such business * * * shall be deemed equivalent to an appointment * * * of the Secretary of State of Texas as agent upon whom service of process may be made * * *.' 'Section 4 of that Article provides that a nonresident 'shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State * * *.' The parties agree that McKanna was doing business in Texas; so that problem is not before us.

"Edgar alleged in his petition that Eileen Ann McKanna resided in Orange County, California, and that she executed and delivered to Edgar her note 'payable to the order of plaintiff at 1210 Perry-Brooks Building, Austin, Texas * * *.' These allegations comply with the requirements of Section 3 of Article 2031b that McKanna be a nonresident and, as stipulated, be doing business in this State. But there are no allegations that McKanna 'does not maintain a place of regular business in this State or a designated agent upon whom service may be made.' The non-existence of those two conditions is shown to be a necessary prerequisite to the applicability of Section 3 because of the language used in Section 2. * * *"

▬▬ The judgment which appellant seeks to have reviewed resulted from a full hearing by the trial judge, with stipulations made and evidence adduced and we think such judgment is entitled to all of the favorable presumptions of a judgment as in any other type of suit. Thus the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from their testimony and the exhibits introduced in evidence, were matters to be determined primarily by the trial judge. Also, since findings of fact and conclusions of law were not requested, the whole record should be viewed in its most favorable light to support the judgment, if possible.

There was evidence in the record to the effect that at all relevant times appellee was a New Jersey Corporation with its principal place of business in Lakewood, New Jersey, engaged in the sale, delivery and servicing of propane gas to commercial and residential users solely in the State of New Jersey, and that most of its activities was confined to one county in New Jersey; that it had conducted no business of any kind whatsoever within the State of Texas; and, that its officers, agents or employees had not been in the State of Texas for any reason in connection with the appellee's business during the period germane to this suit.

There is a dispute between the parties and in the evidence as to where the acceptance of the offer to purchase the propane trailer for $15,000.00 was made.

No written contract or agreement was entered into between appellant and appellee, and appellant obtained the trailer in question in New Jersey from an independent contractor who was hired to pick it up and deliver it there. The only direct personal contact between appellant and appellee was made when Walker, appellant's transport sales engineer, called on appellee's treasurer Lindenbaum at appellee's office in Lakewood, New Jersey, in an effort to sell appellee a propane trailer.

■ Appellant, in its brief, among other contentions, relies on two things as constituting the contact of appellee with the forum State of Texas. One alleged contact comes from the small print under the description column of an invoice providing for payment at the office of Trinity Steel Company, Inc. at Dallas, Texas. This invoice, was a unilaterally prepared invoice, made by appellant only, dated "7/26/63" and was not prepared or sent to the appellee until after the independent contractor had taken the trailer from Texas to New Jersey. This invoice of course was not signed by appellee and was only a unilateral invoice prepared by appellant after the transaction had already been consummated. There had been neither an oral nor a written agreement between the parties as to place of payment. The witness Lindenbaum testified that there had been no written agreement of any kind between the parties. Under the evidence adduced, an implied finding on the part of the trial court that there was neither an oral nor written agreement made between the parties with reference to the place of payment, is sustainable. Clearly the unilateral invoice made by appellant after the transaction was consummated, containing the fine print "payable, etc., in Dallas, Texas" would not constitute a promise to pay in Dallas, Texas, by appellee, who did not enter into such promise.

Appellant's other alleged contact of the appellee with the forum State of Texas has to do with the place of the acceptance of the contract. The testimony of appellant's witness Walker and appellee's witness Lindenbaum are in conflict on this point. The trial court, being the judge of the credibility of these witnesses and of the weight to be given their testimony, accepted Lindenbaum's version to the effect that appellant made the offer to him by telephone and that he, on behalf of appellee, accepted appellant's offer to sell at appellee's place of business in Lakewood, New Jersey. We think the evidence is amply sufficient to support an implied finding by the trial court that appellant's offer to sell was accepted by appellee at appellee's office in Lakewood, New Jersey.

It is our view that McKanna v. Edgar, supra (388 S.W.2d 927) is clearly distinguishable from the facts in this case—in McKanna v. Edgar a defendant executed and delivered a written promissory note wherein it specifically provided for payment in Austin, Texas—here there was neither an oral nor a written agreement to pay in Texas, and the unilateral invoice prepared after the transaction was consummated, and not signed or executed by appellee, would not constitute a written promise on the part of appellee to pay in Texas.

It is our view that the evidence is sufficient to support implied findings of the trial court to the effect that there was no contract made in the State of Texas between appellant and appellee, that appellee by no act purposefully availed itself of the privilege of conducting activities in the State of Texas, that appellee was not "doing business" in the State of Texas, and that those "minimal contacts" which are a prerequisite to personal jurisdiction of the courts of Texas over a non-resident defendant were lacking as to appellee.

■ After considering the record and the authorities hereinbefore referred to, it is our holding that the trial court rendered a correct judgment which should be affirmed.

The judgment of the trial court is affirmed.