AMCO TRANSWORLD, INC., and Pan American Trade Development Corp., Libellants,

v.

M/V BAMBI, Her Engines, Tackle, Apparel, etc., D/S A/S Banafart and A/S Gulftrade, and Societe Metallurgique de Normandie, Respondents.

No. 64–H–204.

United States District Court
S. D. Texas,
Houston Division.

Aug. 9, 1966.

Bracewell & Patterson, Houston, Tex., Harold R. DeMoss, Jr., Houston, Tex., for libellants.

Baker, Botts, Shepherd & Coates, Houston, Tex., Dale Harvill, Houston, Tex., for respondent D/S A/S Banafart and A/S Gulftrade.

Butler, Binion, Rice, Cook & Knapp, Houston, Tex., Fletcher Etheridge and Richard H. Caldwell, Houston, Tex., for respondent Societe Metallurgique de Normandie.

## MEMORANDUM

INGRAHAM, District Judge.

The respondent Societe Metallurgique de Normandie (hereinafter "Societe") has filed its motion to dismiss for want of jurisdiction. Societe was joined as a respondent in a suit brought by the owners and consignees of cargo damaged in transit. Societe is a French corporation and was the vendor of the damaged cargo and the charterer of the vessel on which the goods were shipped. The other respondents in the suit are the vessel "M/V Bambi" and two Norwegian corporations who own the vessel.

Societe received purchase orders from the libellant AMCO Transworld, Inc. (hereinafter AMCO), which Societe accepted in France and mailed notice of acceptance to AMCO. This transaction resulted in the contracts for sale of goods by Societe to AMCO. The goods were sold on a cost and freight basis (c. & f.).

The goods which AMCO purchased from Societe were shipped to Texas pursuant to a voyage charter party between Societe and the co-respondents who own the vessel "M/V Bambi". The terms of the voyage charter party provided that Societe's stevedores would load the cargo in France but the cargo was to be discharged from the vessel free of expense to the charterer.

Societe received the purchase price for the goods sold to AMCO by issuing drafts drawn on a Texas bank. These drafts were honored by the bank pursuant to a letter of credit contract between the bank and the purchaser, AMCO.

Process was served on Societe in this lawsuit pursuant to Article 2031b, Vernon's Annotated Civil Statutes. The motion to dismiss for want of jurisdiction initially raises the basic issue as to what the scope of Article 2031b is.

Article 2031b provides for service of process on the Secretary of State as agent for foreign corporations "doing business" within the purview of the statute. Section 4 of Article 2031b defines "doing business" in the following terms:

"For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation * * * shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or part in this State."

In Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69, at page 73 (5 CA 1961), the following statement (dicta) is made by Judge Brown in reference to the scope of Article 2031b:

"(T)he Texas purpose was to exploit to the maximum the fullest permissible reach under federal constitutional restraints. It was also, as it has been for other states, a means of avoiding the troublesome difficulties of tying amendability [amenability] of service of process to taxability of a foreign corporation, or denying it access to the courts and related problems of the regulation of the right to do business." (footnotes omitted; parentheticals added).

This interpretation of the scope of Article 2031b has recently been accepted by implication by the Texas Court of Civil Appeals in Trinity Steel Co., Inc. v. Modern Gas Sales & Service, 392 S.W. 2d 861 (1965), error ref. n. r. e. In this case the court tested the amenability

of a foreign corporation to service of process under Article 2031b in terms of the constitutional standard of "minimum contacts". The implication of the case is that if a foreign corporation has "minimum contacts", it is necessarily within the scope of Article 2031b. Although Section 4 of Article 2031b is somewhat ambiguous due to the phrase "without including other acts that may constitute doing business",[1] this court adheres to the view that the scope of Article 2031b is as broad as the constitutional standard of "minimum contacts". The determination to be made in this case is whether Societe had the requisite "minimum contacts" in Texas. There is no question raised as to the compliance with the procedural provisions of Article 2031b or the adequacy of notice received by Societe.

A brief summary of the evolution of the "minimum contacts" doctrine will suffice as it has been extensively discussed by many legal scholars.[2] International Shoe Co. v. State of Washington etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), heralded the new approach by dispensing with the concept of "presence" and directing attention to the particular corporate activity and the contacts with the forum state. Several years later, McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), illustrated the trend "toward expanding the permissible scope of state jurisdiction". In this case, a single insurance contract with a resident of the forum state was held to be sufficient contact with the state so as to subject the insurer to service of process. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), announced the existence of certain limitations on the expanded jurisdiction of the state courts. This case stated that a unilateral activity by those claiming a relationship with the non-resident entity is not a "contact" with the forum state and a non-resident defendant must purposefully avail himself of the privilege of conducting activities within the forum state.

The alleged contacts which Societe had with the State of Texas concerning the contracts for sale of goods to AMCO can be grouped in three categories: (1) Possible contacts arising from method by which Societe was paid for the goods; (2) Possible contacts arising from the fact that Societe was the charterer of the vessel on which the goods were shipped; (3) Possible contacts arising from the solicitation of the contracts from Texas corporations.

### I.

Societe received payment for the goods sold to AMCO by virtue of a letter of credit contract between AMCO and a Texas bank. Societe issued drafts on the bank and on presentation of the drafts with the bills of lading, they were duly honored. The bank was then reimbursed pursuant to the letter of credit contract by AMCO and would endorse the bills of lading to AMCO.

The nature of a letter of credit contract is described in Gilmore & Black, The Law of Admiralty (1957), page 104, as follows:

"Involved in a letter of credit arrangement are three separate contracts. There is, first, the contract of sale between the seller and the buyer. Secondly, there is a contract between the issuing bank and its customer, the buyer, which provides for reimbursement of any advances made by the bank for its customer's account. Thirdly, there is the letter of credit itself, which is in substance a promise by the bank to pay drafts drawn by the beneficiary, the seller,

---

1. See discussion in Thode, In Personam Jurisdiction; Article 2031b, The Texas "Long Arm" Jurisdiction Statute; and The Appearance To Challenge Jurisdiction In Texas and Elsewhere, 42 Texas L.R. 279, 307–08 (1964).

2. E. g., see 1 Barron & Holtzoff, Federal Practice and Procedure, 679–720 (Wright Ed. 1960); 2 Moore, Federal Practice, 1154–73 (second ed. 1965); Thode, supra note 1.

up to a stated amount if presented to the bank before the expiration date of the credit with specified documents attached."

■ Payment by virtue of the letter of credit contract is an accommodation to the purchaser. The vendor, Societe, is only a beneficiary and not a party to the credit arrangement between the bank and AMCO. Societe was a party to the original sales contract with AMCO but it was made and performed outside Texas. It is the view of this court that payment by virtue of the letter of credit contract between the bank and AMCO did not give Societe any contacts in Texas.

## II.

■ The sales contract between Societe and the libellant, AMCO, were cash and freight (c. & f.). This means that the price paid by the purchaser includes cost and the freight to a specified destination. See 1965 Texas Session Laws, Uniform Commercial Code, Section 2–320. A c. & f. contract permits either the seller to prepay the freight or the purchaser to deduct the actual freight charges from the purchase price. Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399 (2 CA 1945), cert. denied 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982. Under a c. & f. contract, the seller fulfills his duty by delivery of the goods to a carrier and the prepayment of the freight charges. After delivery and payment of the charges, title to the goods passes to the purchaser and risk of loss is on him. See Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., supra; 1965 Texas Session Laws, Uniform Commercial Code, Section 2–320. Societe, in view of its c. & f. contracts with AMCO, entered into a voyage charter party with the owners of the "M/V Bambi". Thus the goods shipped on the chartered vessel had the freight charges prepaid by the charterer, Societe. The charter party between Societe and the owners of the Bambi was not a demise or a bareboat charter. The owners retained exclusive possession, command and navigation of the vessel.

The voyage charter party entered into by Societe did not place Societe in the business of receiving and carrying cargo. It was a mere contract of affreightment with the shipowner being considered the carrier of the goods on board. United States v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813 (1915); Reed v. United States, 78 U.S. (11 Wall) 591, 20 L.Ed. 220 (1871); See Marcardier v. The Chesapeake Ins. Co., 12 U.S. (8 Cranch) 39, 3 L.Ed. 48 (1814). It is the view of the court that the shipping of goods sold under a c. & f. contract consummated in France by a vessel under a voyage charter by Societe did not give Societe any "contacts" in Texas.

## III.

The most serious contention that Societe has the requisite minimum contacts in Texas is based on its solicitation of business in the state. The sales contracts with AMCO apparently were a result of this solicitation although the contracts were actually made and performed outside the state.

■ The Commercial Director of Societe has made two trips to Texas, the duration of each being one day. During these trips several clients were visited and business was solicited *but no contracts were consummated within the state.* All other solicitation by Societe was by mail except for the two short isolated visits discussed above. It is the court's opinion the mere solicitation of business by Societe in the manner described does not constitute "minimum contacts" or "doing business" as contemplated by the Constitution or Article 2031b.

MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832 (2 CA 1958), involved a question of whether a Florida corporation was doing business in New York so as to be subject to service of process there. The corporation maintained a New York bank account and an office with three employees. This office for-

warded requests for reservations to Florida for confirmation and served as an information center in New York. The court held that the activity carried on in New York was only solicitation of business and not sufficient to subject the corporation to service of process.

Kelly v. Three Bays Corp., 173 F.Supp. 835 (S.D.N.Y.1959), affirmed, 276 F.2d 958 (2 C.A. 1958), held that the solicitation of cargo business by the New York agents of a foreign vessel owner did not make the foreign owner amenable to process in New York. The court also observes that the volume of business involved is immaterial if only solicitation is involved. Greek Tourist Agency, Inc. v. Hellenic Mediterranean Lines, 199 F. Supp. 6 (S.D.N.Y.1961), also held the solicitation of cargo and passengers in New York did not constitute doing business in the state.

For additional cases holding that the solicitation of business does not constitute "minimum contacts" with the forum state, see Barron and Holtzoff, 1 Federal Practice and Procedure 677–82 (Wright Ed. 1960). It should be noted that the particular cases discussed supra are all subsequent to the McGee case which has been urged as controlling on the court.

In summary Societe has never maintained an agent in Texas; maintained a place of business in Texas; had any employees stationed in Texas; maintained a bank account in Texas; had any subsidiary which has done business in Texas; owned any real or personal property in Texas; entered into any contract in Texas or any contract to be performed in Texas. It is the court's opinion that Societe has not purposefully availed itself of the privilege of conducting activities in Texas, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and does not have the requisite "minimum contacts" in the State of Texas.

Societe's motion to dismiss for want of jurisdiction will be granted. The clerk will notify counsel to draft and submit an appropriate order.