Robert F. BARNES, Plaintiff,

v.

IRVING TRUST COMPANY and Iran
Pistachio Export Co., Defendants.

Civ. A. No. 67–B–83.

United States District Court
S. D. Texas,
Brownsville Division.

Sept. 25, 1968.

Rankin, Kern, Martinez & Van Wie, H. H. Rankin, Jr., McAllen, Tex., for plaintiff.

Cox, Wilson, Duncan & Clendenin, E. Wayne Wilson, Brownsville, Tex., for defendant Irving Trust Co.

Hall, Mills & Hall, E. G. Hall, Mission, Tex., for defendant Iran Pistachio Export Co.

## MEMORANDUM AND ORDER

GARZA, District Judge.

This case arises out of an alleged breach of contract in the purchase and sale of some Iranian Pistachio nuts.

The Plaintiff is a Texas resident. Defendant Irving Trust Company (hereinafter called "Irving") is a New York State corporation. Defendant Iran Pistachio Export Co. (hereinafter called "Iran") is an Iranian company that has an office in the State of New York.

Both Defendants have filed motions to dismiss the complaint on the basis that the Plaintiff's complaint does not state a cause of action as required by Rule 8(a) (1) of the Federal Rules of Civil Procedure.

■ Rule 8(a) (1) of the Federal Rules of Civil Procedure is to be liberally construed, and I find that the Plaintiff's complaint sufficiently conforms to that rule.

The Defendants' motions to dismiss are, therefore, denied.

Both Defendants also seek a change of venue to the Southern District of New York.

■ After looking at all the prospective witnesses in this case and their location, and what they must testify to, I find that the arguments for a situs of the forum to try the case are pretty equally balanced; and I must therefore, give weight to the situs of the forum chosen by the Plaintiff; and this motion is also denied. The Defendant Irving Trust Company is, therefore, certainly before this Court and will remain here.

With regard to the Defendant Iran, it has filed a motion to quash the service and to dismiss the complaint because it claims that it has not had the "minimum contacts" with the State of Texas to justify substituted service to obtain in personam jurisdiction in accordance with the constitutional requirements.

Its motion to quash the service is based on the failure of the Plaintiff to set forth the required basis for substituted service as required by Article 2031b of the Texas Revised Civil Statutes.

■ To obtain valid service through the Secretary of State on a nonresident pursuant to Art. 2031b of the Texas Revised Civil Statutes, it is mandatory to show that:

(1) The nonresident has no legal place of business in the State; or

(2) The nonresident has no authorized agent upon whom service can be made.

McKanna v. Edgar, 388 S.W.2d 927 (Tex. S.Ct.).

■ The Plaintiff has requested leave of the Court to amend the pleading to comply with these requirements; and such request is hereby granted. It would be a waste of motion to quash the service and order the Plaintiff to again serve the Defendant Iran. Iran has notice of the suit and is not prejudiced by a failure of the Plaintiff to comply with these requirements of the Texas law.

Iran's motion to quash service is, therefore, denied.

The question of whether or not Iran has had sufficient contacts with the State of Texas to allow service by the Texas "long arm" statute is the matter which has given this Court some concern.

■ There is no longer any serious question that the scope of Art. 2031b of the Texas Revised Civil Statutes is as broad as the constitutional standard of "minimum contacts" will allow. Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69 (5 Cir. 1961); Amco Transworld, Inc. v. M/V Bambi, 257 F. Supp. 215 (D.C.1966); Trinity Steel Co., Inc. v. Modern Gas Sales & Service Co., 392 S.W.2d 861 (1965), err. ref. N.R.E.

■ On deciding the question of the constitutional standard of "minimum contacts", each case has to be viewed on its own facts. The facts that we must examine are those that are before the Court by the pleadings, affidavits and the deposition of the Plaintiff.

An examination of these facts shows that the pistachio nuts made the subject of the contract in question were originally sold by Iran to a Mexican corporation, Fomento Mexicano de Exportaciones e Importaciones, S.A. (which will hereinafter be called "Fomento").

The nuts in question were sent by Iran to Houston, Texas, where they were brought into the United States in bond for entry into Mexico, and were shipped in care of the Plaintiff, who is a Customs house broker and who was acting for Fomento.

The record shows that the Defendant Iran Pistachio Export Co. is a corporation duly organized under the laws of Iran. Its home office and principal place of business is Teheran, Iran. The officers and shareholders are citizens and residents of Iran. The company has only one office in the United States and that is in New York, N. Y. It has no license to transact business in any State of these United States. It has never had an agent in Texas; has never maintained an office, established a bank account, or had any subsidiary doing business in Texas. It has never owned any real or personal property in Texas, nor has it solicited any business in Texas. Its dealings with the nuts in question are the only contacts that it has had with Texas.

As stated before, Iran shipped the nuts in question to Houston, where they were transferred in bond to Hidalgo, Texas.

Difficulty was encountered in getting the nuts into Mexico, so they were stored, first in a Customs bonded warehouse in Hidalgo. Apparently Fomento not only had difficulty getting the nuts into Mexico, but was having financial difficulties of its own.

Apparently there was a Texas corporation called Fomex, Inc., which was acting as a purchasing agent for Fomento, the Mexican corporation. Two Morgan brothers were involved with both the Texas and Mexican corporations. These corporations owed the Plaintiff Barnes, the Customs house broker, some money.

It appears that one of the Morgan Brothers called Iran's office in New York City and had them issue an invoice for the nuts in question to Fomex, Inc., so that it could, in turn, get the nuts out of bond and into commerce in the United States. This apparently was done at their request by Iran.

The nuts were taken out of bond and imported into United States commerce after the payment of duties, and the nuts were allegedly taken to McAllen, Texas, to be put in cold storage.

From the affidavit of the representative of Iran, it seems that one of the Morgan boys, by telephone, sold the nuts in question to Iran, but this contract was allegedly never complied with.

As stated before, Plaintiff Barnes was owed moneys by both the Mexican and American corporations, and his claim is that he was given title to the nuts in question so that he could sell them and apply the proceeds to the accounts of Fomento and Fomex.

Barnes contacted the representative of Iran in New York by telephone, and after several conversations a contract was entered into for the re-purchase by Iran of the nuts in question, and Iran caused an irrevocable letter of credit to be issued by Defendant Irving Trust Company with Barnes as the beneficiary. The beneficiary Barnes could draw on Irving Trust by draft accompanied by certain specified documents.

According to the deposition of Plaintiff Barnes and his affidavits, during his conversations with the representative of Iran, Iran suggested that they wanted the nuts inspected by an inspector of Superintendents Co., Inc., and this was a condition made a part of the letter of credit. Barnes claims that he contacted the Superintendent's office in Chicago

and was informed that they had an office in Houston; that he called the Houston office of Superintendents and was, in turn, informed that a man by the name of Oslov, with the Dix Shipping Company in Brownsville, was one of their agents and inspectors; that when he contacted Superintendents he informed them that they would be working for Iran, and not for him; that this man Oslov, of Superintendents, went to McAllen and checked the nuts in question; that a certificate was not obtained from Superintendents, but that in conversations with the representative of Iran, he was informed that they had already received a report from him.

At some stage of the proceedings, the First National Bank of McAllen, Texas, with whom Barnes did business, got into the act, and its Executive Vice-President, a Mr. Spillars, was in contact with a man by the name of Hardiman, of Irving Trust. Because of conversations had between Spillars and Hardiman, an amendment to the letter of credit was wired to the First National Bank of McAllen.

Plaintiff Barnes claims that after these amendments to the letter of credit, he shipped the nuts in question on board Sealand Trailers, hauled by Alamo Express who he claims was the agent of Sealand, for shipment of the nuts to the Port of Houston, where they were to be loaded on a steamer for New York. Apparently Sealand did not put the nuts on board ship for reasons which yet have to be explained.

The First National Bank of McAllen sent the draft with documents attached to Irving, but Irving refused to pay the draft because the necessary documents, they claimed, were not attached, and on orders of their customer Iran.

A summary of the facts outlined above shows that Iran caused the nuts in question to be brought into Texas; caused a letter of credit to be sent by Irving Trust to Texas; caused a representative of Superintendents, acting in their behalf, to come and inspect the nuts in question; caused the nuts to be shipped from Hidalgo, Texas, to Houston. They had attempted to purchase the same nuts from other parties in Texas, and had issued more than one invoice on the nuts, one of which was to a Texas corporation, once the nuts were in Texas.

As can be seen, there was more than one purposeful act done by Iran in connection with this transaction.

The fact that it has already been found that Defendant Irving is presently before the Court, and the reason for its being before it is because of its issuance of the irrevocable letter of credit which it issued at the request of Iran, weighs heavily in this Court's decision to keep Iran before it.

■ As to the Defendant Iran, this Court finds, after viewing all the records and law, that the "minimum contacts" necessary are present to constitute valid out-of-state service. The contract in question was to be substantially performed in Texas.

The Fifth Circuit Court of Appeals recently pointed out the importance of the place of performance of a contract in determining "minimum contacts".

Once the nuts in question were loaded on the Sealand Trailers, they were to be insured by Iran. So it must have been contemplated that possession by them was to take place as of that time. Barnes, the Plaintiff, performed his end of the contract when he loaded the nuts in such a manner. Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5 Cir., 1966).

Considering the traditional notions of justice and fair play, I find that Iran had sufficient "minimum contacts" with Texas to be required to submit to its jurisdiction in the case at bar.

It is, therefore, ordered, adjudged and decreed that the motions to dismiss of the Defendants be, and the same are hereby denied; that the motion to quash service of the Defendant Iran be, and it is hereby denied; that the motion of Defendant Iran to dismiss for want of jurisdiction be, and the same is hereby de-

nied; and that the motions of both Defendants for change of venue to the Southern District of New York be, and the same are hereby denied.