Glenn Earl COULTER and wife, Eldera
Coulter, Plaintiffs,

v.

SEARS, ROEBUCK AND CO., Defendant
and Third-Party Plaintiff-Appellant,

v.

WARWICK ELECTRONICS, INC.,
Third-Party Defendant-
Appellee.

No. 28282.

United States Court of Appeals,
Fifth Circuit.

May 13, 1970.

See also, 5 Cir., 411 F.2d 1189.

Donald M. Hunt, Lubbock, Tex., for appellant.

Kenneth Bowlin, Cade & Bowlin, Alton R. Griffin, W. Gordon Dickinson, Crenshaw, Dupree & Milam, Lubbock, Tex., for appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

GEWIN, Circuit Judge:

Earl and Eldera Coulter, residents of Texas, purchased a Model 6184 Silvertone Color Console television from Sears, Roebuck and Company in Lubbock, Texas. In February 1967 the television allegedly burst into flames partially destroying their home. The Coulters filed suit against Sears in the Lubbock County District Court seeking damages of $14,991.02. Sears, a New York corporation, removed the action to the United States District Court under the diversity statute. Sears subsequently filed a third-party complaint against the manufacturer of the television, Warwick Electronics, Inc., a Delaware corporation having its principal place of business in Chicago, Illinois. The district court granted Warwick's motion to dismiss the third-party complaint for want of in personam jurisdiction and Sears appeals.[1] We reverse and remand.

Warwick is a major supplier of televisions for Sears and is the only supplier of the model purchased by the Coulters. It is not authorized to do business in Texas and does not maintain a regular

1. Sears first attempt to gain the ear of this court was unsuccessful. 411 F.2d 1189 (1969). We now have jurisdiction by virtue of Sears's appeal from the district court's entry of *final judgment* dismissing Sears's third-party complaint against Warwick. *See* Rule 54(b) Federal Rules of Civil Procedure.

place of business in that state. Warwick's contact with the Lone Star State is the presence within the state of a substantial number of its television sets. According to an undisputed affidavit of Sears's senior buyer, Warwick has sold televisions to Sears "for a long time" with knowledge that a large number of them would be shipped to Texas for resale through Sears's stores in that state.[2]

Cases of this genre present two questions: First, whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. Second, whether the exercise of jurisdiction, if authorized, would violate the due process clause of the Fourteenth Amendment.

■ We unhesitatingly conclude that Warwick's activities bring it within the reach of Texas's long-arm. Several recent Fifth Circuit decisions recognize that the scope of the statute is as broad as due process will permit. This court in Eyerly Aircraft Co. v. Killian stated:

We have little difficulty in finding the statutory reach even though the *Erie* directives from the Texas courts are lacking in delineation and incandescence. The federal courts in diversity cases, however, have on several occasions engaged in rational divination on this question and have always held that article 2031b should be given as broad a reach as due process will permit any "Long Arm" statute to be given. In Atwood Hatcheries v. Heisdorf & Nelson Farms, 5 Cir. 1966, 357 F.2d 847, 852, this Court per Chief Judge Brown wrote: "we now declare what was more hesitatingly suggested in Lone Star and even more guardedly assumed in Jack Tar that 'the Texas purpose [in enacting article 2031b] was to exploit to the maximum the fullest permissible reach under federal constitutional restraints.'" See also Turner v. Jack Tar Grand Bahama, Ltd., 5 Cir. 1965, 353 F.2d 954, 956; Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir. 1961, 288 F. 2d 69, 73; Barnes v. Irving Trust Co., S.D. Tex. 1968, 290 F.Supp. 116, 117; Amco Transworld, Inc. v. M/V Bambi, S.D. Tex. 1966, 257 F.Supp. 215, 216–217; cf. Trinity Steel Co., Inc. v. Modern Gas Sales & Service Co., Tex.Civ. App.1965, 392 S.W.2d 861 (writ ref'd n. r. e.).[3]

These cases control our decision in the absence of intervening Texas court decisions indicating the atrophy of that state's long-arm.[4] The remaining consideration is whether the due process clause will permit the exercise of in personam jurisdiction over Warwick.

The reservoir of state jurisdictional power over nonresidents has swollen tremendously in recent years. The receding boundaries of due process reflect the fundamental change in the national econ-

2. The body of the affidavit by Jerome F. Brennan provides:

1. That he is Senior Buyer of television sets for Sears, Roebuck and Co. and has knowledge of the facts hereinafter stated.

2. That he is of legal age.

3. That in October, 1966 and for a long time prior thereto, Sears, Roebuck and Co. purchased, and at the present time SEARS purchases, much of its requirements of black and white and color television sets from Warwick Electronics, Inc.

4. That among the television sets purchased by SEARS from Warwick is Model No. 6184 known as a Silvertone color console.

5. That in October, 1966 and prior thereto Warwick was and at the present time Warwick is SEARS only supplier for the Silvertone color console television set Model No. 6184.

6. That a great many of the color and black and white television sets manufactured by Warwick are and have been sold and offered for sale by SEARS in Texas, all with Warwick's knowledge.

3. 414 F.2d 591, 598–599 (5th Cir. 1969).

4. When construing a state long-arm statute in a diversity case, a federal court is required by *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1933) to interpret the statute as would the highest court of the state. *Walker v. Savell*, 335 F.2d 536, 540 (5th Cir. 1964).

omy since the days of Pennoyer v. Neff.[5] As the Supreme Court observed in McGee v. International Life Insurance Co.:

> Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more states and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity.[6]

The existence of the trend should not be interpreted to herald the "eventual demise of all restrictions on the personal jurisdiction of state courts."[7] "The island of Tobago still may not impose its will upon the whole world."[8] The due process clause continues to define the limits of state jurisdictional power over nonresidents.

The due process touchstone announced by the Supreme Court almost twenty-five years ago in International Shoe Co. v. Washington, allows states to exercise jurisdiction over nonresidents who have such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[9] The updated version of this standard, appearing in Hanson v. Denckla, requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws."[10] A careful examination of recent cases applying these guidelines to products liability cases convinces us that the exercise of jurisdiction over Warwick by Texas is not violative of due process of law.

Our decision is strongly influenced by Judge Goldberg's excellent opinion in Eyerly Aircraft Co. v. Killian.[11] In that case the court was called upon to decide whether due process prevented Texas from exercising jurisdiction over a non-resident manufacturer of an allegedly defective amusement ride, called a Rock-O-Plane, whose operation caused a personal injury in Texas. The manufacturer, an Oregon corporation, had sold the ride to an itinerant amusement company almost twenty years before the accident in Texas. In discussing due process limitations on the exercise of jurisdiction over nonresident manufacturers, this court stated:

> Where a foreign corporation does substantial business within a state, that state may assert in personam jurisdiction over the corporation to enforce a cause of action arising out of a tort committed in part within its

5. 95 U.S. 714, 24 L.Ed. 565 (1878). In *Pennoyer*, the Court announced the proposition that the due process clause is violated when a court renders a personal judgment against a nonresident without having jurisdiction over him, and that jurisdiction may not be acquired by service of process upon a defendant outside the jurisdiction of the court or by publication, absent assent in advance to such mode of service. For a thorough discussion of Supreme Court cases dealing with this question, see Elkhart Engineering Corporation v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965) and Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965).

6. 355 U.S. 220, 222–223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

7. Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958).

8. M. Cardozo, The Reach of the Legislature and the Grasp of Jurisdiction, 43 Cornell L.Q. 210, 213 (1957). *See*, Buchanan v. Rucker, 9 East 192 (K.B. 1808).

9. 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

10. 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

11. 414 F.2d 591 (5th Cir. 1969).

boundaries. Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193. Thus where a corporation with substantial contacts within state X ships into that state a product which it has manufactured in State Y and an injury occurs in state X because of an alleged defect in the product, the corporation may constitutionally be called upon to defend a products liability suit brought in state X where the injury occurred. Deveny v. Rheem Mfg. Co., 2 Cir. 1963, 319 F.2d 124; Shealy v. Challenger Mfg. Co., 4 Cir. 1962, 304 F.2d 102; cf. Carter v. American Bus Lines, Inc., D.Neb. 1959, 169 F.Supp. 460. This result also obtains where the manufacturer has elected to distribute his wares through independent wholesalers instead of through its own corporate apparatus so that it is only very indirectly responsible for the product reaching the injured consumer. Florio v. Powder Power Tool Corp., 3 Cir. 1957, 248 F.2d 367; Etzler v. Dille and McGuire Mfg. Co., W.D. Va. 1965, 249 F.Supp. 1. The present trend is to take the next logical step and hold that a corporation is answerable where it introduces its product into the stream of interstate commerce if it had reason to know or expect that its product would be brought into the state where the injury occurred:

> "Where a defendant does business of such a volume, or with such a pattern of product distribution, that he should reasonably anticipate that his product may be ultimately used in any state, he has done the act required for the exercise of jurisdiction by the state where the injured user resides.
>
> *     *     *     *     *     *
>
> "When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to

hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes. Nor can he deny the substantial interest of the injured person's state in providing a convenient forum for its citizens." Keckler v. Brookwood Country Club, N.D. Ill. 1965, 248 F.Supp. 645, 648–649 (Emphasis in original).[12]

This court's decision in *Eyerly* sustaining Texas's exercise of jurisdiction against constitutional attack was based on two grounds: First, the defendant had introduced the Rock-O-Plane into the stream of interstate commerce with reason to know or expect that the ride would eventually be brought into Texas. Second, Eyerly had direct contacts with Texas in the form of substantial and continuous business relations with Texas concerns. While the latter ground is absent in the instant case, we think the former is sufficient to satisfy due process requirements.

The facts in the instant case provide a much stronger base for application of the stream of commerce theory than those in *Eyerly*. Warwick's contacts with Texas through the stream of interstate commerce are far more direct, immediate and substantial than those in *Eyerly*. A great many of Warwick's televisions have been retailed by Sears in Texas. These products do not meander for years along the paths of interstate commerce. Warwick has sold to Sears for a long time with knowledge that a portion of its products would be shipped immediately and directly to Texas for resale. In *Eyerly* there was, at most, a strong likelihood that the product would nomadize through Texas; in the instant case Warwick unquestionably knew that its products were being regularly marketed in Texas.

Our decision in the instant case is supported by persuasive state court authority.[13] One of the first cases relying sole-

---

12. *Id.* at 595.

13. Our decision is also influenced by two federal district court decisions, Keckler v. Brookwood Country Club, 248 F.Supp.

645 (N.D.Ill.1965) cited by Judge Goldberg in *Eyerly*, and also Anderson v. Penncraft Tool Company, 200 F.Supp. 145 (N.D.Ill.1961). *See also*, Chunky

ly on the "stream of commerce" theory to justify a state's exercise of jurisdiction over a nonresident manufacturer is Gray v. American Radiator & Standard Sanitary Corp.[14] In that case the allegedly defective product causing plaintiff's injury was a safety valve on a water heater. The Ohio manufacturer sold a number of these valves to a Pennsylvania corporation for installation in its water heaters. The heaters were subsequently sold and at least one found its way through the channels of interstate commerce into Illinois where the plaintiff's injury occurred. In considering the constitutionality of the exercise of jurisdiction by Illinois over the Ohio manufacturer, the court stated:

> To the extent that its business may be directly affected by transactions occurring here [Illinois] it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.

As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States.[15]

During the decade which has lapsed since *Gray* several other courts have followed the rationale of the Illinois Supreme Court. In Ehlers v. United States Heating and Cooling Mfg. Corp.,[16] the Minnesota Supreme Court upheld the state's exercise of jurisdiction over the nonresident manufacturer of an allegedly defective boiler which caused property damage in Minnesota. The boiler had been the subject of four successive sales before installation in Minnesota. At least two of these sales took place outside the forum state. The court stated, "[T]he product here involved was manufactured by appellant corporation for use by the general public. It is not contended that the area of foreseeable use of the product was so limited as to exclude the State of Minnesota."[17]

Corp. v. Blumenthal Bros. Chocolate Co., 299 F.Supp. 110 (S.D.N.Y. 1969); Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966); Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960). *Contra* Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6th Cir. 1964); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir.

1956); Pendzimas v. Eastern Metal Products Corp., 218 F.Supp. 524 (D. Minn.1961).

14. 22 Ill.2d 432, 176 N.E.2d 761 (1961).

15. *Id.* at 766.

16. 267 Minn. 56, 124 N.W.2d 824 (1963).

17. *Id.* 124 N.W.2d at 827.

A similar result was reached in Andersen v. National Presto Industries, Inc.[18] where the injuring product was a coffeemaker. So far as the record showed, the nonresident manufacturer's only contact with the forum state, Iowa, was the presence of the single allegedly defective coffeemaker. In upholding that state's exercise of jurisdiction over the manufacturer, the Iowa Supreme Court stated:

> It is charged that the defendant marketed the coffeemaker; and its affidavit in support of its special appearance in no way counters the inference that its product was designed for general sale and use not only in its home state of Wisconsin, but generally. It would be flying in the face of reality if we did not admit knowledge that manufactured products are ordinarily designed for commercial sale in whatever markets may be found for them, without regard to state lines. They are placed in the stream of commerce, and when they reach a foreign state they have the protection of its laws. It is not unfair to say they should assume the burdens as well as the benefits.[19]

The New York Court of Appeals adopted the "stream of commerce" rationale in Feathers v. McLucas [20] where the plaintiff was injured when a tank manufactured by a New Jersey corporation ruptured in New York. The court found that the requisite jurisdictional act occurred when the manufacturer sold the tank to a Pennsylvania corporation with knowledge that it would be attached to a truck making interstate hauls in adjacent states, including New York. Thus the defendant had reason to know or expect that the tank would be brought into New York.

■ In the instant case the manufacturer's contacts with the forum state are far more direct and substantial than those occurring in either *Gray, Ehlers, Andersen* or *Feathers*. In each of the

latter only one of the defendant's products was shown to have found its way into the forum state; and, this product followed a circuitous uncharted course through the channels of interstate commerce. The Coulters' television followed a route defined by a pattern of distribution established over a long period of time. Warwick sold this allegedly defective product with knowledge that Sears had regularly taken a portion of Warwick's television sets to Texas for resale. Thus, Warwick had ample reason to expect that this television would be retailed in Texas. Warwick has purposefully enjoyed the benefits of the Texas market and the protections of that state's laws. Due process of law is not violated by the exercise of jurisdiction over Warwick in the state of Texas.

Reversed and remanded.

---

18. 257 Iowa 911, 135 N.W.2d 639 (1965).

19. *Id.* 135 N.W.2d at 643.

20. 21 A.D.2d 558, 251 N.Y.S.2d 548 (1964).