Linwood **BLAND**, Individually, and as Custodian Under the Texas Gifts to Minors Act for Nancy Diane Bland, et al.

v.

**KENTUCKY FRIED CHICKEN CORPORATION**, and Colonel Sanders Inn, Inc.

Civ. A. No. 71–H–440.

United States District Court,
S. D. Texas,
Houston Division.

Nov. 9, 1971.

Mike Willatt, Houston, Tex., for plaintiff.

Bracewell & Patterson, John R. Cope, Houston, Tex., for defendant.

MEMORANDUM AND ORDER:

SEALS, District Judge.

This action is predicated upon the alleged breach of a contract between Plaintiff Bland on the one hand and Defendant Colonel Sanders' Inn, Inc., (CSI), on the other, for the purchaser of "French Quarter Inn" in New Orleans, Louisiana, from Bland by CSI in

exchange for shares of common stock in Kentucky Fried Chicken Corporation (KFC) which CSI would cause to be issued. KFC owns 95% of the stock in CSI and is its creator, having joined with two businessmen (Monson and Heatherington) to form a subsidiary corporation to exploit the opportunities KFC perceived in the motel industry. One of the motels acquired by the subsidiary was the "Houstonaire Inn" owned by Bland. It was during and after this acquisition that Bland and CSI discussed and finally agreed to a similar acquisition of the "French Quarter Inn."

The suit was commenced, by Bland in the 127th District Court, Harris County, Texas. Service was made upon CSI through its appointed agent, C. T. Corporation System, in Dallas, Texas. Service was made upon KFC by substitute service on the Texas Secretary of State pursuant to Vernon's Ann.Tex. Civ.St. art. 2031b. KFC removed the action to the federal courts and then filed a motion to dismiss for lack of jurisdiction over the person of KFC and for improper venue, and to quash service of process.

■ The question of "long-arm," or "substitute service," jurisdiction has two distinct facets. The first issue is whether the state statute provides for substitute service on these facts, i. e. is the defendant "doing business" within Texas? This is a matter of state law. The second issue presents a federal question, namely whether the defendant's contacts with the state, upon which jurisdiction is based, are such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice embodied in the due process clause of the Fourteenth Amendment. International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Does Kentucky Fried Chicken do business in Texas within the meaning of V. A.T.S. art. 2031b, sec. 4 so as to be amenable to substitute service under section 3?

Based upon the depositions, affidavits, and exhibits of the parties and the briefs of counsel, the Court makes the following Findings of Facts:

1. Kentucky Fried Chicken Corporation (KFC) is a Delaware corporation with its principal place of business and corporate headquarters in Louisville, Kentucky.

2. KFC is engaged in the franchise food business and markets a production process to franchisees in various states, including thirty-two in Texas.

3. KFC licenses the franchisees to use its trade name in connection with their business, but does not own or manage local fried chicken outlets.

4. KFC provides franchisees with the opportunity to buy from national suppliers at discounts, but does not tie franchisees to specific suppliers.

5. All franchise agreements are negotiated and executed in the State of Kentucky.

6. For its part KFC is entitled to a percentage of the gross receipts of its franchisees.

7. KFC uses a portion of this return from its franchisees to finance a continuous nationwide advertising campaign for the mutual benefit of KFC and its franchisees, using the name "Kentucky Fried Chicken," the image of a Kentucky colonel, "Colonel Harlan Sanders," and various promotional slogans.

8. KFC does not maintain any plants, warehouses, offices, or production facilities in Texas.

9. KFC is not licensed to do business in Texas and does not have a designated agent in Texas to accept service of process.

10. CSI is a subsidiary of KFC formed and capitalized by KFC pursuant to a contract with Monson and Heatherington to establish a chain of motels using the good will of the national image of KFC's "Colonel Sanders."

11. In exercising its contract rights KFC appointed three of CSI's five directors and acquired 95% of its stock.

12. KFC agreed in its contract with Norman P. Monson and Thomas F. Heatherington to cause them to be employed by CSI as President and Chairman, respectively, of CSI for a term of five years under certain conditions and for salaries which KFC would cause CSI to pay.

13. KFC agreed in its contract with Monson and Heatherington to provide the subsidiary, CSI, with shares of KFC common stock which would be used to acquire motel properties from third persons.

14. KFC represented CSI as one of its assets on its consolidated stockholders statement.

15. The contract between the plaintiff Bland and CSI was made and was to be performed in Houston, Texas.

It is obvious that vis-a-vis its Texas franchisees, KFC is doing business in Texas. In Atwood Hatcheries v. Heisdorf and Nelson Farms, 357 F.2d 847 (5th Cir. 1966), a Washington franchisor was held within the reach of Texas' long-arm by virtue of its franchise contracts with several Texas outlets. Although the contracts were made and executed wholly within the State of Washington, they were to be performed in Texas for the mutual benefit of the franchisor and franchisee. That is the case with KFC. Unlike *Atwood Hatcheries,* the contract dispute here is not between an outraged franchisee and a bashful franchisor. Here the litigants are a frustrated seller and his buyer, who happens to be a 95% subsidiary of KFC formed to buy the type of properties seller is selling.

■ The Texas law is stated in O'Brien v. Lanpar Co., 399 S.W.2d 340 (Tex. 1966) which involved the question whether an Illinois court had in personam jurisdiction over a nonresident Texas corporation against whom it had rendered a default judgment. In deciding that such long-arm jurisdiction had been perfected, Justice Pope cited favorably a Washington Supreme Court decision, Tyee Construction Co. v. Dulien Steel

Products, Inc., 62 Wash.2d 106, 381 P.2d 245 (1963), which established three basic factors which must coincide if jurisdiction over a nonresident corporation is to be entertained:

(1) the nonresident corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice, considering the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. 399 S.W.2d at 342.

That this is the law in Texas there can be no doubt. The *O'Brien* decision was followed in Sun-X International Co. v. Witt, 413 S.W.2d 761 (Tex.Civ.App. —Texarkana, 1967, n.r.e.) and the Supreme Court's refusal of a writ of error with the notation "no reversible error" indicates that the Court of Civil Appeals correctly stated the law.

■ Applying these principles to the situation presented here, it is apparent that KFC has purposefully consummated acts and conducted commercial transactions in Texas by granting licenses to use its trade name and processes in Texas to Texas franchisees, by conducting advertising and promotional campaigns intended to increase the Texas sales of its franchisees, and by exacting a percentage of the gross receipts from its Texas franchisees. However, the second item in this trinity is not presented by the franchise relationship in this case. The plaintiff's cause of action has nothing to do with the granting or promoting of commercial franchise food operations in Texas, or with their success. The plaintiff's complaint is grounded upon a contract he has with a subsidiary of KFC to sell a Louisiana motel to that subsidiary. The Texas long-arm statute

has not yet been interpreted to subject a nonresident person or corporation who conducts business in Texas to the jurisdiction of Texas courts for some claim having nothing to do with its Texas operations. This court declines to do what Texas has not done. See this Court's opinion in Odom v. Thomas d/b/a S & R Cattle Company, et al., 338 F. Supp. 877 (S.D.Tex., August 26, 1971).

This is not to say that Texas could not choose to do so constitutionally. The burgeoning of franchise operations, the intricate relationship of franchisors, franchisees, subsidiaries and suppliers, and the impact they have on the local economy might well compel a State to assert more control over these multifarious operations. It would not fly in the face of due process for a State to do so.

■ As a second theory for sustaining the validity of the service the plaintiff contends that he is the third party beneficiary of the contract between KFC and CSI (i. e., the Monson, Heatherington employment contract) to acquire and develop motel properties and that he can sue on that contract. However, the defendant's assertion that the "third person" must be the promisee in-fact, although not in form, is a correct statement of the law. Williston on Contracts, § 356. Any other person who derives a benefit from the operation of the contract is merely an "incidental" beneficiary and cannot enforce for his benefit any obligations to which the contracting parties may have assented.

There is a third theory which can uphold the service here and sustain the jurisdiction acquired thereby. The plaintiff contends that because of the parent-subsidiary relationship and the control KFC exercised over CSI that KFC was a party to the contract through its subsidiary and that this constitutes doing business in Texas and subjects KFC to the jurisdiction of the Texas courts.

■ While such a theory may uphold the service, it is not the same as a finding of liability. A decision on this theory requires some regard to the merits of the case, but to avoid lengthy entanglements and the risk of pre-judging the case, the plaintiff is required only to make a *prima facie showing of the facts* on which jurisdiction is predicated. Wright and Miller, Federal Practice and Procedure Civil § 1068, p. 250 citing Surpitski v. Hughes-Keenan Corp., 362 F.2d 254 (1st Cir. 1966); United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966) cert. den. 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440; Midwest Packaging Corp. v. Oerlikon Plastics, Ltd., 279 F.Supp. 816 (S.D.Iowa 1968); Alosio v. Iranian Shipping Lines, S. A., 307 F.Supp. 1117 (S.D.N.Y.1970).

■ The theory is one of principal-agent, and just as one corporation can be served for another, so too, service on a subsidiary can be service on the parent corporation. Wright and Miller, *supra*, Civil § 1104, pp. 401–404. While valid service on the subsidiary does not automatically subject the nonresident parent to the jurisdiction of the forum, *id.*, one court has reasoned that it does, modern business communication and cooperation being what it is. Fooshee v. Interstate Vending Co., 234 F.Supp. 44, 52 (D.Kan.1964).

Success on this theory is predicated upon the contention that KFC, through its subsidiary CSI, was in fact a party to the contract; that this constitutes doing business in Texas; and that service was perfected by either service on and through the subsidiary, or by substitute service on the Secretary of State. Put in another fashion, the plaintiff contends that CSI was a mere shell and that the real party to the contract was KFC.

■ The plaintiff has made a *prima facie* showing that, for the purpose of jurisdiction, KFC was a party to the contract between CSI and the plaintiff

for the purchase of the French Quarter Inn. From the briefs, depositions, and exhibits it affirmatively appears that the relationship between KFC and CSI is very close and that KFC can not only influence and control the decisions of CSI, but has a veto over any significant business decisions which CSI might wish to make. KFC owns 95% of CSI's common stock and represented CSI as an asset in its consolidated stockholder statement. KFC names three of the five CSI directors. KFC agreed to cause CSI to name the two promoters, Monson and Heatherington, to the top executive posts of CSI. KFC agreed to capitalize CSI. KFC agreed to provide CSI or third parties with shares of KFC common stock to be exchanged for motel properties to be acquired from the third parties. In short, as was intended by its contract with Monson and Heatherington, KFC established an agent corporation to use KFC's "Colonel Sanders" image in the exploitation of the motel market to KFC's benefit. KFC controlled the board of directors of the subsidiary and established the conditions of employment of the subsidiary's top executives. Thus, KFC could determine what course of action CSI would pursue, and when and where it would acquire motel properties. Since KFC also supplied quantities of its stock to exchange for such properties, its view of the value of the property to be acquired would determine the outcome of the negotiations, the amount of consideration, and ultimately whether or not the contract would be honored. KFC made the decisions which might involve violations of securities laws and breaches of contracts by CSI. Such power is enough to *suggest* that KFC was controlling CSI in the making of these motel acquisition contracts and was actually doing business through CSI. United States v. Scophony Corporation of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Handlos v. Litton Industries, Inc., 304 F.Supp. 347, 351 (E.D.Wisc.1969); Flank Oil Co. v. Continental Oil Co., 277 F.Supp. 357 (D.Colo. 1967).

That this power was exercised by KFC in this case can be seen by viewing the contract between Bland and CSI. It is permeated with references to KFC and its financial condition. The consideration paid by CSI was to be in the form of KFC stock which the subsidiary would "cause" KFC to issue and deliver to the Bland interests. CSI agreed to "cause" KFC to undertake a registration statement covering at least 50% of the stock issued to Bland at the sole expense of KFC, if KFC had not already done so by August 31, 1970. If the remainder of the shares were not included in a registration statement by June 30, 1971, then CSI would "cause" KFC to do so at KFC's sole expense. It is doubtful that the subsidiary could in fact "cause" these events without the prior knowledge and consent of the parent. The CSI–Bland agreement bound KFC's general counsel to advise the Bland group of relevant actions by the Securities and Exchange Commission. For their part the Bland interests undertook to take such action, including the execution and delivery of documents, as may be deemed necessary by *either* KFC or CSI. It appears that KFC played a substantial role in the formulation of the contract and that all parties contemplated that KFC would have a major role in the effectuation of the agreement even though it was not a formal party. The references to KFC's solid financial position, the inclusion of CSI as an asset in KFC's consolidated stockholder statement, and the use of KFC stock as consideration indicates that Bland was looking to KFC for performance and was depending upon the control KFC exercised over CSI to protect himself in dealings with the fledgling subsidiary. KFC regarded CSI as an "asset", and as its agent in the acquisition of properties which would enhance the value of its "asset."

Therefore, KFC, through its subsidiary, entered into a contract in Houston which by its terms was to be

performed at Houston, Texas. This constitutes the "doing of business" within Texas and subjects KFC to valid substitute service via the Texas long-arm statute, V.A.T.S. art. 2031b and establishes venue in this district. The doing of business within Texas, as evidenced by the control KFC could and did exercise over the decisions of CSI involving the making of this contract and the details of the securities arrangements, satisfies the due process minimum contacts test of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). For an able discussion of "minimum contacts" and Article 2031b, see, Hearne v. Dow-Badische Chemical Co., 224 F.Supp. 90, 97–101 (S.D.Tex.1963). The three part test established in O'Brien v. Lanpar Co., supra, is also satisfied.

It is the opinion of the Court that KFC was doing business in Texas by entering into a contract to be performed in Texas through its subsidiary CSI, and that the service of process on KFC through the Texas Secretary of State was valid. Therefore, it is ORDERED that the defendant's motion to dismiss for lack of personal jurisdiction and for improper venue, and motion to quash service of process be, and the same are hereby, DENIED.

It also appears to the Court that its decision that Kentucky Fried Chicken Corporation does business in Texas through its subsidiary and is validly before the Court is a decision which involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order denying the motion to dismiss will materially advance the ultimate termination of the litigation. Therefore, the defendant may seek an interlocutory appeal of this order from the Court of Appeals pursuant to 28 U.S.C. § 1292(b).