**Patricia Ann REICH et al., Plaintiffs,**

v.

**SIGNAL OIL AND GAS COMPANY et al., Defendants.**

**Vivian Jackson PACE et al., Plaintiffs,**

v.

**TEXTRON, INC., et al., Defendants.**

**Civ. A. Nos. 72–H–945, 72–H–864.**

United States District Court,
S. D. Texas,
Houston Division.

Nov. 6, 1974.

848

Robert H. Roch and Michael W. Perrin, Fisher, Roch, & Gallagher, Houston, Tex.; and Derry D. Harding, Brown & Harding, Lubbock, Tex., for plaintiffs.

Alan S. Dale, Eastham, Watson, Dale & Forney, Houston, Tex., for The Mayflower Co.

Perry O. Barber, Jr., Baker & Botts, Houston, Tex., for Textron, Inc. and Bell Helicopter Co., a Division of Textron, Inc.

Gus A. Schill, Jr., Royston, Rayzor, Cook & Vickery, Houston, Tex., for Signal Oil & Gas Co.

## MEMORANDUM AND ORDER:

SEALS, District Judge.

The Court, having considered the Motions to Quash Service and Dismiss for Lack of Jurisdiction made by Defendants Bristow Helicopters, Ltd., (Bristow) and Construzioni Aeronautiche Giovanni Agusta (Agusta), hereby ORDERS:

The Motions are GRANTED.

These motions arise following a long series of discovery procedures going to the jurisdictional questions in this most complex and multi-faceted pair of cases. In brief, these causes of action are the result of a tragic accident resulting in the deaths of two men, one a Louisiana resident and one a Texas resident. They were working on an oil drilling project off the Coast of Ghana in West Africa when the helicopter transporting them from the offshore rig to the airport in Accra, Ghana, crashed. The helicopter had been manufactured in Italy by Agusta, an Italian corporation, according to a design owned by Defendant Bell Helicopter Co., and licensed to Agusta by Bell. Bell is a division of Textron, Inc., an American corporation, and is not challenging jurisdiction as it is doing business in Texas. The helicopter was then sold by Agusta to Bristow, an English corporation. The sale negotiations and the delivery of the helicopter took place in England or Italy. The helicopter was then leased by Bristow to Defendant Mayflower Co., an American corporation doing business in Texas and not challenging jurisdiction. It appears that at no time prior to the accident was the helicopter ever in the United States, however, following the accident some metallurgical testing was apparently done by Bell in Texas. Based upon these facts, Movants assert that this

Court may not maintain jurisdiction over them under the Texas Long Arm Statute, Article 2031b, Vernon's Annotated Texas Statutes.

The basic constitutional issues involved in the question of whether or not a federal district court may maintain jurisdiction over a nonresident defendant under the aegis of the forum state's long arm statute have been the subject of sufficient detailed and authoritative analysis that this Court need not trace the history of these concepts from their inception. *See, e. g., Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 235, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Pennoyer v. Neff,* 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877). However, some discussion must be had of the application of these principles to the Texas statute and the construction of that statute by the Court of Appeals and this Court.

■ As the Court of Appeals recently reiterated in *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974), it cannot be gainsaid but

> that Article 2031b represents an effort by Texas to reach as far as federal constitutional requirements of due process will permit in exercising jurisdiction over the persons of nonresident defendants.

*Id.* at 491 (Citations omitted). However, the state statute may not reach further than constitutional limits. Therefore, as the Court of Appeals stated in *Product Promotions,* the first of a trilogy of questions to be answered in a jurisdictional dispute, such as the one presented in the case at bar, is whether or not the acts of the defendant come within the strictures of the state statute. *Id.* at 492. If this primary question is answered affirmatively then both parts of a bipartite constitutional inquiry must also be satisfied, *i. e.,* whether or not there are "minimum contacts," and whether or not it would be fair and reasonable to require the defendant to litigate in this forum. *Id.* at 494.

■ It seems clear from the pleadings in this case that this is an action arising under the tort clause and not the contract clause of the Texas statute. The statute defines "doing business" in relation to the commission of torts as follows:

> For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by . . . the committing of any tort in whole or in part in this State.

Article 2031b(4), V.A.T.S. In order to permit a clearer application of this statute to the Movants, they will be dealt with separately.

Bristow is a British corporation engaged in the business of purchasing and leasing helicopters. It has had numerous and substantial contacts with Texas which Bristow readily admits. These contacts are the result of Bristow's dealings with Bell, the manufacturer of the helicopter that Bristow purchased from Agusta, the Italian Movant-Defendant. It is Plaintiff's contention that Bristow's contacts with Texas resulted in Bristow "doing business" within the meaning of the Texas statute. Therefore, the constitutional trilogy of questions, as enunciated in *Product Promotions,* must be answered vis-a-vis Bristow's dealings with Texas.

In answer to the first part of the constitutional trilogy, there are three Court of Appeals decisions which are apposite to this cause of action and particularly to Bristow's motions. These cases are *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973), *Coulter v. Sears, Roebuck & Co.,* 426 F.2d 1315 (5th Cir. 1970), and *Eyerly Aircraft v. Killian,* 414 F.2d 591 (5th Cir. 1969).

■ In *Jetco,* the cause of action did not arise out of "contractual contacts with Texas," therefore, Plaintiff had to

show that Defendant " 'committed a tort in whole or in part' in Texas." 473 F.2d at 1232. In following the letter of Article 2031b the Court in *Jetco* determined that *prima facie* cases were established, however, in the case at bar this Court is of the opinion that the Plaintiffs have not established such a case. If Bristow committed a tort through its negligence in maintaining or operating the helicopter, it perforce occurred outside of Texas because the helicopter itself was outside of Texas. If Bristow breached any contract that it might have made in Texas (and there is no small dispute over whether or not *any* contract was entered into in Texas by Bristow) then Plaintiffs have not pleaded such a cause of action and it is doubtful that Plaintiffs would have standing to so plead inasmuch as they were not parties to a contract made by Bristow in Texas.

■ In *Coulter* the controlling factor which the Court of Appeals held to confer jurisdiction was the fact that the manufacturer of the defective product had reason to know that some of its goods were going to be introduced into Texas retail markets. This case would seem to impart to Article 2031b a certain aspect of geographic foreseeability. Plaintiffs raise this point, however, it does not seem applicable to Bristow. In its refutation of this theory Bristow claims that because it is a "user" rather than a manufacturer or retailer then this theory could have no application to Bristow. In this regard it is the opinion of this Court that under no interpretation of *Coulter* would Bristow be amenable to jurisdiction, however, this Court draws no conclusion as to whether or not a "user," as Bristow characterizes itself, would be subject to this factor in determining long arm amenability under different circumstances.

■ Finally, in *Eyerly* the manufacturer-defendant had business contacts in Texas unrelated to the cause of action, as there are in the case at bar. In *Eyerly* the defective product was sold outside of Texas, however, the fact that the product was put into the stream of inter-state commerce when coupled with the Defendant's unrelated business contacts constituted "doing business." In the case at bar Bristow put the helicopter into the stream of international commerce which can in no way satisfy the requirements of due process inasmuch as the helicopter was never put into service in the United States.

Therefore, it is the opinion of this Court that Bristow was not "doing business" within the meaning of Article 2031b. However, in the interest of completeness, the other two elements of the constitutional trilogy will be dealt with, if only cursorily.

■ The first of the due process requirements, "minimum contacts," requires but slight mention because

if a foreign corporation has "minimum contacts", it is necessarily within the scope of Article 2031b. Although Section 4 of Article 2031b is somewhat ambiguous due to the phrase "without including other acts that may constitute doing business", this court adheres to the view that the scope of Article 2031b is as broad as the constitutional standard of "minimum contacts".

*Amco Transworld, Inc. v. M/V Bambi,* 257 F.Supp. 215, 217 (S.D.Tex.1966) (footnote omitted). Therefore, because it is the determination of this Court that Bristow is not "doing business," then there are no "minimum contacts."

■ The last element to be considered, as stated in *Product Promotions,* is that "it must not be unfair or unreasonable to require the nonresident to defend the suit in the forum." 495 F.2d at 497–98. As the Court of Appeals indicated, the resolution of this question involves rather nebulous standards. However, there are at least two basic considerations involved in questions of long arm jurisdiction which would seem to be applicable here. These are the last two of the five factors enumerated originally by Judge Ingraham in *Lone Star Motor Import, Inc. v. Citroen Cars Corp.,* 185 F.Supp. 48, 56 (S.D.Tex.1960), *rev'd on other*

*grounds,* 288 F.2d 69 (5th Cir. 1961), *i. e.,* "whether the forum has some special interest in granting relief, and the relative conveniences of the parties." In answer to the former this Court, again, calls upon a holding of Judge Ingraham to the effect that

> Texas has no "special" interest in granting relief to its citizens against a foreign corporation on a cause of action that arose under the laws of a foreign government for conduct outside the United States.

*Pliler v. Asiatic Petroleum Co. (Texas), Ltd.,* 197 F.Supp. 212, 217 (S.D.Tex.1961). In answer to the latter of these two tests, this Court finds that because there are already actions pending in Ghana and England as a result of the accident in question, the accident occurred in Ghana, and the helicopter was manufactured in Italy, the facts that some relevant metallurgical testing was done in Texas and that Bristow is not a stranger to this jurisdiction do not go to make this forum more convenient than any other. Even if it were found that this is a more convenient forum, that factor, alone, would not be sufficient to sustain jurisdiction when taken in conjunction with the other findings in this case. Therefore, as to Defendant-Movant Bristow, jurisdiction does not lie.

The other Defendant-Movant, Agusta, is in quite a different position vis-a-vis jurisdiction than is Bristow. Agusta is an Italian corporation engaged in the business of manufacturing helicopters. The helicopter that crashed and caused the deaths of the two decedents was manufactured by Agusta in Italy and sold by Agusta to Bristow. As previously stated, the helicopter was never in the United States, however, the helicopter was manufactured pursuant to a design owned by Bell and licensed to Agusta. It is the Licensing Agreement upon which Plaintiffs place much weight.

Here, again, as in any jurisdictional dispute, the state statute must be satisfied, and the Defendant must be said to be "doing business." Agusta, as Bristow, has had numerous and substantial business contacts with Texas, but in the case of Agusta the Licensing Agreement would appear to complicate matters. It might seem, at first blush, that because Agusta allegedly entered into a contract in Texas—which fact Agusta strongly disputes—and because the helicopter that crashed was built as a direct result of that contract then there should be enough contacts with Texas to constitute "doing business." However, it is the judgment of this Court that jurisdiction over Agusta does not obtain in this case.

█ On the facts and on the pleadings Plaintiffs are attempting to establish a cause of action sounding in tort. Plaintiffs have failed to meet the requirements stated in *Jetco* in order to bring Augsta within the wording of Article 2031b. While it is possible that Agusta committed the tort of negligence by manufacturing the helicopter in Italy, by causing injury in Ghana, or by not following the design or safety standards established by Bell, it is the opinion of this Court that Agusta committed no tort, in whole or in part, in Texas. Any relationship that Agusta has had with Texas is too tenuous to satisfy the tort clause of Article 2031b or the constitutional requirements of due process.

█ Certainly the requirements of *Coulter* and *Eyerly* are no more satisfied in the case against Agusta than they were in the case against Bristow. Agusta sold the helicopter in Italy to an English corporation. If Agusta may be held to any "geographic foreseeability" at all it would be that the helicopter would be used in those areas of the world serviced by Bristow, *i. e.,* the United Kindgom, the Trucial States, Trinidad and Denmark. Certainly Agusta had nothing approaching notice or knowledge of the possibility that this tort would occur. *See Williams v. Brasea, Inc.,* 320 F.Supp. 658, 659 (S.D.Tex.1970). This Court will not hold Agusta to such a degree of foreseeability as to approach clairvoyance to expect Agusta to have known that its vendee would lease the helicopter to the Mayflower Co. for ultimate use in Ghana resulting in the death of a

Texan. If anything, the Licensing Agreement militates against any such geographic foreseeability on the part of Agusta inasmuch as the Agreement forbids Agusta from marketing its Bell-designed helicopters in competition with Bell in the United States.

However, assuming *arguendo* that Agusta's Licensing Agreement was entered into in Texas, Plaintiffs have not alleged a contract cause of action, and this Court has found no authority to support the thesis that one who is neither a party nor a third-party beneficiary to a contract may raise the contract for the purpose of establishing jurisdiction over a nonresident defendant. *See Bland v. Kentucky Fried Chicken Corp.*, 338 F.Supp. 871, 875 (S.D.Tex. 1971). But even if there were such a principle of law it is the opinion of this Court that under the facts of this case the Licensing Agreement would be insufficient to support a finding of jurisdiction. The mere fact of the existence of a contract possibly entered into in Texas does not provide jurisdiction in and of itself. The same basic factors of jurisdiction under the letter of the state statute and under the requirements of constitutional due process still obtain. Under

> the present state of the law, the proper focus of inquiry is that of the constitutional limitation to be placed upon the assertion of jurisdiction over a particular nonresident under the facts of a particular case.

*Hoppenfeld v. Crook*, 498 S.W.2d 52, 56 (Tex.Civ.App.1973), *writ of error refused, n. r. e.* In testing Plaintiffs' jurisdictional claim against Agusta, the "three basic factors which should coincide if jurisdiction over a nonresident [defendant] is to be entertained," *Bland*, 338 F.Supp. at 874, citing *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966), do not coincide in this case. While Agusta may have done some purposeful act or consummated some transaction in Texas, this cause of action did not arise from, nor was it connected with such act or transaction. *See Odom v. Thomas*, 338 F.Supp. 877, 878 (S.D.Tex.1971). Thus, at least one, if not both, of the first two factors are not satisfied here. Therefore, only the last factor remains to be dealt with.

The third factor enunciated in *O'Brien* was the question of whether or not the assumption of jurisdiction would be an offense against " 'traditional notions of fair play and substantial justice . . . .' " 399 S.W.2d at 342. This question is analogous to the second part of the bipartite constitutional test laid down by the Court of Appeals in *Product Promotions*. The first part of the two-pronged test has been answered in the negative as to Agusta under the holding of *AMCO Transworld*, as quoted above, inasmuch as this Court finds there to be no "minimum contacts" or doing of business in Texas by Agusta. Under the test of whether or not it would be fair and reasonable to require Agusta to litigate in this forum, it is the opinion of this Court that it would not be fair or reasonable. While Agusta, as Bristow, is not a stranger to Texas, the extra-territorial aspects of this cause of action do not warrant this Court to require Agusta to litigate here. The place of the accident is Ghana, and the place of Agusta's negligence, if any, is Italy, Ghana, or both, and Agusta's relations with Texas are not sufficiently compelling to require Agusta to come here and defend itself.

Therefore, it is the judgment of this Court that neither of the Movants is amenable to jurisdiction in this forum in this cause of action, that service on Movants should be and it hereby is quashed, and that they should be and they hereby are dismissed from this case.