In The

 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-233 CV


____________________



ANDREW BOYO, ABNL, INC., AND ABNL, LTD., Appellants



V.



MARGARET BOYO, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 02-08-05770 CV 






OPINION


 Margaret Boyo filed a petition for divorce against Andrew Boyo. In the same petition,
Margaret sued ABNL, Ltd., a foreign limited liability corporation established under Nigerian
law, and ABNL, Inc., a Delaware corporation doing business in Texas. She alleged Andrew
and the two companies fraudulently transferred funds and defrauded Margaret of her interest
in community property. She alleged Andrew used the two companies to divert community
assets in order to deprive her of a just and right division of the marital estate. 

 Margaret attempted to serve ABNL, Ltd. through the Texas Secretary of State. The
company did not file an answer and the trial court entered a default judgment against ABNL,
Ltd. 

 The trial court appointed Margaret and Andrew joint managing conservators of their
two children, and ordered Andrew to pay child support and spousal maintenance to Margaret. 
The final decree granted the divorce, divided the marital estate, enjoined Andrew Boyo from
removing the children from the continental United States, found the two companies were
alter egos of Andrew, found Andrew conspired with the companies to deplete the community
estate through fraudulent transfers, and awarded Margaret $1.25 million from Andrew and
the two companies, jointly and severally. 

 ABNL, Ltd. filed a restricted appeal claiming the trial court lacked jurisdiction to
grant the default judgment because ABNL, Ltd. does not do business in Texas and does not
have sufficient minimum contacts with the State. The company says it was not given notice
of the claims against it and was denied due process of law. Andrew and ABNL, Inc.
appealed the alter ego and fraud findings, and the $1.25 million award. Andrew also
appealed the injunction. 

 We affirm the injunction. We reverse the default judgment against ABNL, Ltd., and
we reverse the $1.25 million judgment against Andrew and ABNL, Inc. The cause is
remanded for further proceedings consistent with this opinion. The Background

 Andrew and Margaret married in Nigeria in 1993, arrived in the United States in 1997,
and moved to Montgomery County, Texas, in 1999. Prior to the marriage, Andrew owned
and managed Andy Boyo Nigeria, Ltd. The company name was later changed to ABNL, Ltd.
Andrew was the majority shareholder, chief executive officer, and managing director of
ABNL, Ltd. According to Andrew, two other individuals and an "employee/management
share" owned the remaining shares. 

 In 1997, ABNL, Ltd. decided to incorporate ABNL, Inc. in Delaware to handle
administrative matters in the United States for ABNL, Ltd. In 1998, sixty percent of the new
corporation's shares were assigned to ABNL, Ltd., twenty percent to Andrew, fifteen percent
to Peter Boyo, and five percent to Steve Oke. ABNL, Inc. contracted with ABNL, Ltd. to
perform administrative services for ABNL, Ltd. from 1998 until 2003. 

 In 1998, ABNL, Ltd. and Baker Hughes entered into a contract with Shell Petroleum
Development Company to construct a barge in New Orleans for exploration work in Nigeria.
Shell paid for the construction of the barge during 1999, 2000 and 2001. Andrew testified
he individually guaranteed a loan for ABNL, Ltd. for 36 million naira (Nigerian currency)
from Community Circular Bank in Nigeria in 1999. Andrew says he pledged his 800,000
shares in ABNL, Ltd. and real estate in Nigeria as security. He testified that in 2001, ABNL,
Ltd. defaulted on the loan and Community Circular Bank foreclosed on his ownership
interest in the corporation and on the real estate. ABNL, Ltd. contracted with Shell again in
2003 to build another barge but, according to Andrew, Shell cancelled this $34 million
contract. Andrew testified that at the time of the execution of this contract, he no longer had
any ownership interest in ABNL, Ltd. and was working for the company as a consultant. He
says ABNL, Ltd. informed ABNL, Inc. in 2003 that ABNL, Ltd. would not renew the
administrative services contract between the two entities. Andrew testified ABNL, Inc. is
now defunct.

 Margaret filed for divorce in 2002. 

The Default Judgment Against ABNL, Ltd.


 ABNL, Ltd. claims the trial court lacked jurisdiction over the company because the
company does not have sufficient minimum contacts with Texas. See Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 225-31 (Tex. 1991)
("Federal constitutional requirements of due process limit the power of the state to assert
personal jurisdiction over a nonresident defendant[.])." ABNL, Ltd. argues the attempted
exercise of jurisdiction by the trial court over the company denied the company due process
of law. Margaret contends ABNL, Ltd. waived any jurisdictional challenge by failing to file
a special appearance in the trial court. See, e.g., Lang v. Capital Res. Invs., I & II, L.L.C.,
102 S.W.3d 861, 864 (Tex. App.--Dallas 2003, no pet.). ABNL, Ltd. responds it never
received notice of the lawsuit because Margaret's service of process on the company through
the Secretary of State was defective. 

 We do not accept the argument that ABNL, Ltd. waived its jurisdictional challenge
by not making a special appearance in the trial court before filing this restricted appeal. Due
process requires that a party be given notice and an opportunity to present its objections. See
Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 85-87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). 
Rule 120a, which requires a special appearance be filed before any other pleading or motion,
applies to proceedings in the trial court. See Tex. R. Civ. P. 2 (scope of rules); see Tex. R.
Civ. P. 120a ("Every appearance, prior to judgment, not in compliance with this rule is a
general appearance."). See generally Lang, 102 S.W.3d at 864 (Special appearance filed
after a default judgment and before motion for new trial, preserved due order of pleading
under the circumstances.). A restricted appeal is available to a party who did not participate
in the trial court. See Tex. R. App. P. 30; see generally Norman Commc'ns v. Tex. Eastman
Co., 955 S.W.2d 269, 270 (Tex. 1977) (applying prior Rule 45). The procedure for a
restricted appeal would serve little purpose if we require a party to show preservation of the
challenge in the trial court before filing a restricted appeal. Furthermore, if notice is not
given, a party may not learn of the suit until after the trial court loses jurisdiction over the
case. See generally Whitney v. L & L Realty Corp., 500 S.W.2d 94, 96 (Tex. 1973) ("If the
Secretary fails to forward the process, the defendant will probably not learn of the suit until
long after the time for filing a motion for new trial."). 

 To successfully attack a default judgment by restricted appeal, an appellant must (1)
file notice of the appeal within six months of the date of judgment; (2) be a party to the suit;
(3) not have participated at trial; (4) not have filed a timely postjudgment motion, request for
findings of fact and conclusions of law, or notice of appeal under Rule 26.1(a) of the Texas
Rules of Appellate Procedure; and (5) show error apparent from the face of the record. Tex.
R. App. P. 26.1(c), 30. See generally Norman Commc'ns, 955 S.W.2d at 270 (applying four
requirements under prior Rule 45). ABNL, Ltd. satisfies the first four requirements. The
issue presented is whether a lack of jurisdiction is apparent from the face of the record. See
Dezso v. Harwood, 926 S.W.2d 371, 373 (Tex. App.--Austin 1996, writ denied). 

 To obtain service on ABNL, Ltd., Margaret relied on section 17.044(b) of the Texas
Civil Practice and Remedies Code, the long-arm statute which provides for service of process
on a nonresident defendant. See Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b) (Vernon
1997). See also Tex. R. Civ. P. 108a; Comm'n of Contracts of the Gen. Executive Comm. of
the Petroleum Workers Union of the Republic of Mex. v. Arriba, Ltd., 882 S.W.2d 576, 584
(Tex. App.--Houston [1st Dist.] 1994, no writ). Under that statute, the Secretary of State is
"an agent for service of process on a nonresident who engages in business in this state, but
does not maintain a regular place of business in this state or a designated agent for service
of process, in any proceeding that arises out of the business done in this state and to which
the nonresident is a party." Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b). Section
17.045(a) provides that "[i]f the secretary of state is served with duplicate copies of process
for a nonresident, the documents shall contain a statement of the name and address of the
nonresident's home or home office and the secretary of state shall immediately mail a copy
of the process to the nonresident at the address provided." Tex. Civ. Prac. & Rem. Code
Ann. § 17.045(a) (Vernon Supp. 2005). If service is obtained through the Secretary of State
pursuant to the statute, the Secretary of State's certificate of service, absent fraud or mistake,
establishes service of process. Campus Invs., Inc. v. Cullever, 144 S.W.3d 464, 465 (Tex.
2004) (citing Capitol Brick, Inc. v. Fleming Mfg. Co., 722 S.W.2d 399, 401 (Tex. 1986)). 

 Because this was a no-answer default judgment, the issue of minimum contacts was
not actually litigated in the trial court. See generally Kawasaki Steel Corp. v. Middleton, 699
S.W.2d 199 (Tex. 1985)(distinguishing default judgments from non-default cases). To
support a default judgment based on service under the long-arm statute, the record must show
(1) the pleadings contain allegations that make the defendant amenable to process by the use
of the long-arm statute, and (2) the defendant was, in fact, served in the manner required by
the statute. Whitney, 500 S.W.2d at 95-96. In a restricted appeal of a default judgment, there
are no presumptions of valid issuance, service, and return of citation. Primate Constr., Inc.
v. Silver, 884 S.W.2d 151, 152 (Tex. 1994). The record must affirmatively show at the time
the court enters the default judgment an appearance by the defendant, proper service of
citation on the defendant, or a written waiver of service by defendant. See Carmona v. Bunzl
Distribution, 76 S.W.3d 566, 568 (Tex. App.--Corpus Christi 2002, no pet.). 

 Margaret's petition directed that "[p]rocess should be served on Co-Respondent,
ABNL, Limited, a foreign limited liability corporation established under the laws of the
Federal Republic of Nigeria, having its registered address at 10 Norman Williams Street,
Ikoyi, Lagos, State of Nigeria (doing business in the State of Texas), by and through the
Secretary of State of Texas, P.O. Box 13697, Austin, Texas 78711-3697." The proof
Margaret offers to establish service is a copy of the citation and petition and a copy of the
Secretary of State's certificate. However, the certificate shows the Secretary of State
received copies of the divorce citation and first amended original petition for divorce, but
forwarded the copy to a Texas address: "Abnl, Limited; Andrew Boyo, An Officer And
Agent; 1530 Lilac Mist Ln; Houston, TX 77038." This is the address listed in the pleading
for ABNL, Inc., not ABNL, Ltd. (1)
 The certificate notes the process was returned bearing the
notation "Unclaimed." 

 The pleadings contain no allegations that the defendant does not maintain a regular
place of business in Texas, and has not designated or maintained a resident agent for service
of process in Texas. See Tex. Civ. Prac. & Rem. Code § 17.044(a)(1), (b); McKanna v.
Edgar, 388 S.W.2d 927, 929 (Tex. 1965). The pleadings assert generally that ABNL, Ltd.
is the alter ego of Andrew Boyo, but these are not set out as jurisdictional allegations and
Andrew is not identified in the pleading as an agent for service of process for ABNL, Ltd. 
The alter ego theory may be applied under appropriate circumstances to "fuse" entities for
"minimum contacts" jurisdiction purposes. See BMC Software Belg., N.V. v. Marchand, 83
S.W.3d 789, 798-99 (Tex. 2002). But see also generally Michiana Easy Livin' Country, Inc.
v. Holten, 168 S.W.3d 777, 785 (Tex. 2005)("[I]t is only the defendant's contacts with the
forum that count[.]"). The theory may uphold service under appropriate circumstances. See
Bland v. Kentucky Fried Chicken Corp., 338 F.Supp. 871 (S.D. Tex. 1971). Alter ego is not
a service theory supported by the pleadings in this case, however. Margaret attempted
service on the Secretary of State under section 17.044(b). For service of process on the
Secretary of State under § 17.044(b) as Margaret attempted, the pleadings must state the
foreign corporation does not maintain a regular place of business or a designated agent for
service of process in Texas. See Tex. Civ. Prac. & Rem. Code § 17.044(b); McKanna, 388
S.W.2d at 929; Lozano v. Hayes Wheels Int'l, Inc., 933 S.W.2d 245, 247-48 (Tex. App.--Corpus Christi 1996, no writ); South Mill Mushrooms Sales v. Weenick, 851 S.W.2d 346, 350
(Tex. App.--Dallas 1993, writ denied). 

 There is no pleading that the address to which the Secretary of State sent the copy of
the citation and petition was ABNL, Ltd.'s home address or home office. See Tex. Civ.
Prac. & Rem. Code Ann. § 17.045(a); Arriba, Ltd., 882 S.W.2d at 586. There is no
indication the Secretary of State forwarded a copy of the petition to ABNL, Ltd. at the
address Margaret provided as required by the statute, and we cannot presume those facts. 
See Capitol Brick, 722 S.W.2d at 401. The Secretary's failure to forward the process to the
defendant establishes error on the face of the record. See Whitney, 500 S.W.2d at 95-96. The
default judgment must be set aside. See id. at 97. 

 ABNL, Ltd. asks that the case be dismissed for want of personal jurisdiction. 
However, the appropriate procedure under these circumstances is to set aside the default
judgment and remand the case to the trial court for further proceedings. See Whitney, 500
S.W.2d at 97; McKanna, 388 S.W.2d at 930. In McKanna, the Court concluded as follows: 

 McKanna, having now appeared to attack the judgment, is presumed to have
entered her appearance to the term of the court at which the mandate shall be
filed. Rule 123, Texas Rules of Civil Procedure. The judgments of the courts
below are reversed, and the cause remanded to the District Court for a trial on
the merits. 


Id. Rule 123, cited by the Court, provides as follows: 

 Where the judgment is reversed on appeal or writ of error for the want of
service, or because of defective service of process, no new citation shall be
issued or served, but the defendant shall be presumed to have entered his
appearance to the term of the court at which the mandate shall be filed. (2) 


Tex. R. Civ. P. 123. We are reversing and remanding this case because of want of service
of process on the defendant, and Rule 123 provides no new citation need be issued or served
on ABNL, Ltd., and the defendant's appearance will be presumed. 

 Rule 120a provides in part as follows:

 Nothwithstanding the provisions of Rules 121, 122 and 123, a special
appearance may be made by any party . . . for the purpose of objecting to the
jurisdiction of the court over the person or property of the defendant on the
ground that such party or property is not amenable to process issued by the
courts of this State.


Tex. R. Civ. P. 120a. A special appearance under Rule 120a does not contest service of
process; a special appearance contests whether a defendant is amenable to process -- whether
it has sufficient contacts with Texas to satisfy due process and the Texas long arm statute. 
See Dawson-Austin v. Austin, 968 S.W.2d 319, 326 (Tex. 1998); Guardian Royal Exch.
Assurance, Ltd., 815 S.W.2d at 226; Kawasaki Steel Corp., 699 S.W.2d at 201. 

 Rule 120a anticipates the circumstances presented here and provides that a party may
nevertheless file a special appearance on remand notwithstanding Rule 123. Generally, when
there has been a denial of right to notice and an opportunity to be heard, the case must be
considered anew and the party restored to the position it would have occupied had due
process of law been accorded to the party in the first place. See Peralta, 485 U.S. at 87
(Only "wiping the slate clean" would restore the petitioner to where he was before due
process was denied.); Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62
(1965) ("Only that would have wiped the slate clean."). When a party asks a court to set
aside a judgment, that request is treated generally as a submission to the jurisdiction of the
courts of this State. See Liberty Enters., Inc. v. Moore Transp. Co., 690 S.W.2d 570, 571-72
(Tex. 1985) (motion for new trial and agreeing to court's order reinstating suit were
affirmative actions after default judgment entered which constituted a general appearance);
Cates v. Pon, 663 S.W.2d 99, 102 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.)
(held where default judgment entered against appellant and appellant appealed the default
judgment, appellant submitted himself to the jurisdiction of the court). However, Rule 120a
provides an exception under the circumstances of this case, when a no-answer default
judgment is set aside on a restricted appeal because notice of the lawsuit was not provided
by service of process. Rule 120a "wipes the slate clean" by permitting a special appearance
when a no-answer default judgment is reversed in a restricted appeal for want of service.

 The "notwithstanding" clause of Rule 120a was not addressed in Liberty Enterprises,
and the clause did not apply to the circumstances of that case. 690 S.W.2d at 571-72. In
Liberty Enterprises, the Court held a defendant whose motion for new trial stated it was
"ready to try the case when it is properly set for trial[,]" and who agreed to the trial court's
order reinstating the cause of action, entered a general appearance despite having initially
filed a special appearance after a default judgment. Id. The "notwithstanding" clause of
Rule 120a does not reference the motion for new trial rule or any agreement by a party which
submits the party to the jurisdiction of the court. 

 McKanna did not address the "notwithstanding" clause of Rule 120a either. In
McKanna, the defendant executed and delivered a note payable in Austin, Texas. See
McKanna, 388 S.W.2d at 928. The parties agreed McKanna was doing business in Texas;
the Supreme Court noted that "problem" -- the issue here -- was not before the Court. See
id. at 929. The Supreme Court reversed the default judgment because service was obtained
through the Secretary of State under the long-arm statute, and the pleadings included no
assertion that the defendant did not maintain a place of regular business in Texas or a
designated agent upon whom service could be made. See id. at 929-30. In McKanna,
however, the possible applicability of Rule 120a was not mentioned, presumably because the
parties agreed the defendant was doing business in Texas and the lawsuit arose out of a note
payable in Austin, Texas. See id. at 929.

 In its brief to this Court, ABNL, Ltd. asks only that the default judgment be set aside
and it be dismissed for lack of personal jurisdiction. We believe the arguments are consistent
with the assertion that Texas courts do not have jurisdiction over the defendant or its property
to enter a money judgment against it. Rule 120a permits the proper filing of a special
appearance on remand under these circumstances notwithstanding Rule 123. (3) We reverse
the default judgment and remand the claims against ABNL, Ltd. to the trial court for further
proceedings consistent with this opinion.Fraud and Alter Ego

 Andrew and ABNL, Inc. argue the evidence is legally insufficient to support the trial
court's fraud and alter ego findings. See generally City of Keller v. Wilson, 168 S.W.3d 802
(Tex. 2005) (legal sufficiency standard of review). A corporation is a separate legal entity
from its shareholders, officers, and directors. See Wynne v. Adcock Pipe and Supply, 761
S.W.2d 67, 68 (Tex. App.--San Antonio 1988, writ denied). In exceptional circumstances,
however, a court may disregard the corporation's separate existence and hold an individual
liable for what would otherwise be an obligation only of the corporation. See Castleberry
v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986), superseded in part by Tex. Bus. Corp. Act
Ann. art. 2.21 (Vernon 2003). (4) This disregard generally is referred to as piercing the
corporate veil. The alter ego doctrine is one theory used to pierce the corporate veil. 
Castleberry, 721 S.W.2d at 272. The theory may be applied if there is a unity between the
corporation and the individual to the extent that the corporation's separateness has ceased,
and holding only the corporation liable would be unjust. See id. Apart from the alter ego
theory, however, the corporate veil may be pierced if the corporation is used for the purpose
of fraud. See id. 

 Courts occasionally reverse pierce, and under exceptional circumstances hold a
corporation liable for the debts of a controlling shareholder who has used the corporation to
hide assets. See Zahra Spiritual Trust v. United States, 910 F.2d 240, 243-44 (5th Cir. 1990). 
Reverse piercing is sometimes used to characterize as part of a community estate what would
otherwise be a corporate asset. See generally Zisblatt v. Zisblatt, 693 S.W.2d 944, 952 (Tex.
App.--Fort Worth 1985, writ dism'd). In the context of a divorce, the evidence must show
not only that there is unity of the corporation and the spouse, but also that the spouse's
improper use of the corporation has damaged the community estate, and the loss cannot be
remedied by reimbursement. See Lifshutz v. Lifshutz, 61 S.W.3d 511, 516-18 (Tex. App.--San Antonio 2001, pet. denied). (5)

 A spouse who controls the other spouse's interest in community property owes a
fiduciary duty to the other spouse and a presumption of constructive fraud arises if the
property interest is disposed of without the other spouse's knowledge or consent. See In re
Marriage of DeVine, 869 S.W.2d 415, 422 (Tex. App.--Amarillo 1993, writ denied); 
Jackson v. Smith, 703 S.W.2d 791, 795 (Tex. App.--Dallas 1985, no writ). The spouse who
disposes of the community property without the knowledge or consent of the other has the
burden of proof to show the fairness of the disposition of the community property. DeVine,
869 S.W.2d at 422. A claim of fraud on the community may be used to recover specific
property or to obtain a greater share of the community estate on divorce. See Lucy v. Lucy,
162 S.W.3d 770, 777 (Tex. App.--El Paso 2005, no pet.). Although the claim may not be
brought as an independent cause of action for damages against the spouse in a suit for
divorce, the claim may be asserted for consideration in the court's just and right division of
the community estate. See Schlueter v. Schlueter, 975 S.W.2d 584, 585-89 (Tex. 1998). (6) 
The court may award a money judgment against a spouse to achieve an equitable division of
the community estate, but the amount of the judgment must be referable to a specific value
of lost community property. See id. at 588. ("Because the amount of the judgment is directly
referable to a specific value of lost community property, it will never exceed the total value
of the community estate."). 

 Texas courts have permitted the joinder in a divorce petition of a third party to whom
a community asset was transferred. See Southwest Tex. Pathology Assocs., L.L.P. v. Roosth,
27 S.W.3d 204, 208 (Tex. App.--San Antonio 2000, pet. dism'd w.o.j.); Osuna v. Quintana,
993 S.W.2d 201, 205-11 (Tex. App.--Corpus Christi 1999, no pet.). Joining the third party
permits adjudication of that party's ownership claim to the transferred asset. See In re
Burgett, 23 S.W.3d 124, 127 (Tex. App.--Texarkana 2000, no pet.). 

 ABNL, Inc. was incorporated in 1997 after Andrew and Margaret were married, and 
their ownership interest in the corporation is community property. See Tex. Fam. Code
Ann. § 3.002 (Vernon 1998). Andrew testified ABNL, Inc. was incorporated for business
expansion purposes and to manage money for ABNL, Ltd. for work performed for Shell
Petroleum Development Company. He testified there were other shareholders of ABNL, Inc.
and one of them, Peter Boyo, managed the day-to-day operations of the company. Andrew,
on occasion, paid personal expenses out of ABNL, Inc.'s account. He testified these amounts
were deducted from his salary. His testimony demonstrates ABNL, Inc.'s corporate bank
accounts were kept separate from individual bank accounts; ABNL, Inc.'s assets were not
intermingled with personal assets; the corporation filed its own tax returns; and its employees
were employed by the corporation and not by Andrew. Funds were sometimes wired by
Andrew to Margaret's bank account through an ABNL, Ltd. account. Margaret presented
evidence Andrew commingled community estate funds with ABNL, Inc. funds. She testified
Andrew, ABNL, Inc. and ABNL, Ltd. were one and the same. 

 Margaret claims Andrew retained actual control of ABNL, Inc. and ABNL, Ltd. (7) 
Andrew says he lost control of ABNL, Ltd., the only client and the majority shareholder of
ABNL, Inc., before the divorce. He transferred community estate assets to ABNL, Inc. and
others, though he claims the transfers were for consideration. Margaret says Andrew violated
his fiduciary duty to her by conspiring to defraud her of her interest in the community estate,
and by fraudulently transferring assets, (8) specifically wire transfers from ABNL, Inc. accounts
to third parties and vehicle transfers to ABNL, Inc. She testified Andrew, through ABNL,
Inc., made several questionable transfers to Andrew's friends, relatives, and business
associates. Andrew testified the transfers were either in the course of business or facilitated
the exchange of naira for dollars.

 The fraud and alter ego findings indicate the trial court did not find Andrew's
testimony credible and the judge believed Margaret's testimony. As the factfinder she was
the sole judge of the credibility of the witnesses. See City of Keller, 168 S.W.3d at 819. 
Considering Margaret's testimony and the circumstantial evidence, there is more than a
scintilla of evidence to support the trial court's alter ego and fraud findings as to Andrew and
ABNL, Inc. 

$1.25 Million Money Judgment


 Andrew contends the trial court erred in awarding Margaret $1.25 million against
Andrew, ABNL, Ltd., and ABNL, Inc. He also argues the evidence is factually insufficient
to support the findings of alter ego and fraudulent transfer of property. (9) ABNL, Inc. adopts
Andrew's contention that the evidence is factually insufficient to support a finding of
fraudulent transfer, and ABNL, Inc. also argues the evidence is factually insufficient to
support the alter ego finding. The finding of fact by the trial court addressing the $1.25
million award states that "[i]n order to effect a just and right division of the marital estate of
the parties, the Court has determined that it is necessary and appropriate to grant Margaret
Boyo a judgment in the amount of $1,250,000 against Andrew Boyo, ABNL, Inc., and
ABNL, Ltd., joint and severally." The trial court gave no other reason for the specific dollar
amount of the money judgment.

 Margaret testified the community estate was approximately $230,000, not considering
the ownership in, or assets of, the corporations. The ownership interest in ABNL, Inc. is
awarded to Andrew in the judgment. The judgment divides specific property and debts, and
awards certain of the transferred vehicles to Margaret. The judgment also includes an award
of $95,000 to Margaret, which Andrew does not appeal, "[f]or the purpose of a just and right
division of property made in this decree[.]" Any additional judgment against Andrew
beyond $230,000 would not be "a division" of the community estate unless the ownership
in or assets of the corporations are considered or there is evidence of other property
fraudulently transferred. 

 From the record, the basis for the $1.25 million judgment appears to be a calculation
of a share of the profits from the purported $34 million contract with Shell, and the trial
court's alter ego findings reverse-piercing the corporate veils of the two companies,
specifically ABNL, Ltd. The damage amount is not tied to the transfer or loss of any other
specific asset asserted to be part of the community estate. 

 Andrew testified that Shell canceled the $34 million contract and that his interest in
ABNL, Ltd. was lost to a bank. Margaret testified the contract is still performing and
Andrew is still controlling both ABNL, Ltd. and ABNL, Inc. While her testimony provides
more than a scintilla of evidence supporting the trial court's findings, she did not offer any
other evidence in support of her testimony concerning the contract. The continued actual
performance of the Shell contract, as well as Andrew's continued complete domination of
the businesses, would seem to be issues capable of proof from sources other than Margaret,
and from sources with greater personal knowledge. 

 Regardless, the profits would be ABNL, Ltd.'s profits absent the alter ego findings. 
We have set aside the default judgment against ABNL, Ltd. and that company is entitled to
litigate its claim to any asset or profits alleged to be community property. See In re Burgett,
23 S.W.3d at 27. (10) As to Andrew and ABNL, Inc., the evidence presented in this record is
factually insufficient to support the amount of $1.25 million money judgment against
Andrew as a division of community assets and against ABNL, Inc. for specific fraudulent
transfers of community property. (11) A money judgment must be supported by factually
sufficient evidence, and in this context must be referable to a specific value of lost
community property. See Schleuter, 975 S.W.2d at 585-89. The trial court abused its
discretion in dividing the estate. 

The Injunction

 Andrew argues the trial court erred by banning him from traveling internationally with
his children. He says the record lacks any evidence to support the trial court's decision. 
Texas Family Code section 153.501 provides that if credible evidence indicating a potential
risk of international abduction of a child by a parent is presented, the court must determine
whether to take measures prescribed in section 153.503. Tex. Fam. Code Ann. §§
153.501(a), 153.503 (Vernon Supp. 2005). Among the factors the court must consider are
the best interests of the child, the risk of abduction based on risk factors described by section
153.502, and any obstacles to recovering the child if abducted to a foreign country. See id.
§§ 153.501(b), 153.502. In determining whether there is a risk of international abduction of
a child by the child's parent, the court must consider evidence of, among other things, the
parent's lack of "financial reason to stay in the United States, including evidence that the
parent is financially independent, is able to work outside of the United States, or is
unemployed," and a parent's history of violating court orders. See id. § 153.502(a). If the
court is presented with this evidence, the court must also consider whether the parent has
strong ties to a country that is not a signatory to the Hague Convention on the Civil Aspects
of International Child Abduction and whether the parent lacks strong ties to the United
States. Id. § 153.502(b). If the court finds it necessary under section 153.501 to protect a
child from international abduction by the parent, it may prohibit the parent from removing
the child from the United States. Id. § 153.503(4)(A). 

 In its findings of fact and conclusions of law applying section 153.502, the court
found a potential risk of Andrew's international abduction of the children under section
153.501. To protect the children, the trial court restricted Andrew's access to the children's
passports and prohibited him from removing the children from the continental United States. 
Margaret testified she is concerned that if Andrew travels to Nigeria with the children, they
may not be returned to her. She testified she would not be able to afford actions necessary
to return the children to the United States. 

 Andrew argues there is no evidence of the risk of international abduction. There is
evidence Andrew lacks financial reason to stay in the United States and has a history of
violating the court's orders, both of which are factors the court considers in determining
whether there is a risk of international abduction. See id. § 153.502(a)(3),(6). Section
153.502(a)(3) specifically states that when a court considers whether the parent lacks
financial reason to stay in the United States, the evidence may include "evidence that the
parent is financially independent, is able to work outside of the United States, or is
unemployed[.]" Andrew testified he was not employed currently by any entity but he
provides independent consulting services to three companies located in Ghana and Nigeria. 
He testified he typically spends at least half of the year in Nigeria. The record also indicates
the trial court previously held Andrew in contempt for failure to pay court-ordered child
support, and found him in contempt of the second temporary child-support order at trial.

 Subsection (b) of section 153.502 requires the court consider (1) whether the parent
has strong ties to another country that is not a signatory to the Hague Convention on the Civil
Aspects of International Child Abduction and (b) whether the parent lacks strong ties to the
United States, regardless of whether the parent is a citizen or permanent resident of the
United States. Id. § 153.502(b). Pursuant to subsection (c), the court may also consider
whether the foreign country to which the parent has ties presents obstacles to the return of
an abducted child to the United States, has any legal mechanisms for enforcing Texas child
possession or access orders, is a party to the Hague Convention on the Civil Aspects of
International Child Abduction, or whether the child's health or safety would be endangered
in the country because of specific circumstances relating to the child. Id. §
153.502(c)(4)(A),(B),(H),(J). Andrew testified he moved his family to the United States
because his life was threatened, which he testified is "typical in our line of business." On
this record, we cannot say the trial court abused its discretion in granting the injunction. 

Conclusion

 The trial court's injunction is affirmed. The trial court erred in entering a default
judgment against ABNL, Ltd. We set aside the default judgment. We hold the evidence is
factually insufficient on this record to support the money judgment of $1.25 million against
Andrew and ABNL, Inc., and grant their request for a new trial. The $1.25 million judgment
is reversed. The cause is remanded for further proceedings consistent with this opinion.


 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.



 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on March 3, 2006

Opinion Delivered June 15, 2006


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. While it was disputed at trial whether Andrew continued to be in control of or had
an ownership interest in ABNL, Ltd. at the time suit was filed, we look to the pleadings
because this was a no-answer default judgment. Whitney, 500 S.W.2d at 95-96.

2. The appeal by writ of error procedure has been repealed, and a restricted appeal has
been substituted. See Tex. R. App. 30. Rule 30 provides in part as follows: "Restricted
appeals replace writ of error appeals to the court of appeals. Statutes pertaining to writ of
error appeals to the court of appeals apply equally to restricted appeals." Therefore, we read
"writ of error" in Rule 123 to mean "restricted appeal." 
3. As we have discussed, Texas Rule of Civil Procedure 123 provides that no new
service shall be issued or served when a judgment is reversed for want of service, and that
the defendant "shall be presumed" to have entered an "appearance." See Tex. R. Civ. P. 123. 
Rule 123 is not rendered entirely inapplicable by the "notwithstanding" clause of Rule 120a. 
ABNL, Ltd. now has notice of the claims against it and will be before the trial court on
remand. ABNL, Ltd. need not be served with new process in this case and will be presumed
to have entered a general appearance if a special appearance is not properly filed. 
4. The parties have not briefed and so we do not address the scope of article 2.21. See
Texas-Ohio Gas, Inc. v. Mecom, 28 S.W.3d 129, 137 n.8 (Tex. App.--Texarkana 2000, no
pet.); Menetti v. Chavers, 974 S.W.2d 168, 173-74 (Tex. App.--San Antonio 1998, no pet.)
(noting that for all matters covered by art. 2.21, the corporate veil may not be pierced absent
a showing of actual fraud).
5. The trial court made no express finding that reimbursement was an inadequate
remedy. See Tex. Fam. Code Ann. § 3.408 (Vernon Supp. 2005). See also Jensen v. Jensen,
665 S.W.2d 107, 109-10 (Tex. 1984). However, appellants do not raise this issue on appeal. 
6. The parties have not briefed and so we do not address the effect of Schlueter on a
conspiracy claim against a third party. See, e.g., Mayes v. Stewart, 11 S.W.3d 440 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied). In Schleuter, the Supreme Court did not
"reach the issue" of whether "separate or independent tort claims" against a third party
"should also be abolished," because the third party did not make the argument. Schleuter,
975 S.W.2d at 590.
7. The domination of corporate affairs, even by a sole stockholder, will not alone justify
ignoring the separate existence of the corporation. See Zisblatt v. Zisblatt, 693 S.W.2d 944,
950 (Tex. App.--Fort Worth 1985, writ dism'd). 
8. There is also evidence Andrew failed to maintain mortgage payments on the parties'
residence, resulting in a foreclosure and loss of the property. 
9. See generally Dow Chem. Co. v. Francis, 46 S.W.3d 237 (Tex. 2001) (factual
sufficiency standard of review); see also Cain v. Bain, 709 S.W.2d 175 (Tex. 1986) (factual
sufficiency standard of review).
10. Andrew and ABNL, Inc. do not specifically argue the claims are so intertwined with
the claim against ABNL, Ltd. as to require a new trial, and generally an "appellate court
cannot reverse a trial court's judgment absent properly assigned error." See Pat Baker Co.,
Inc., v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998). However, Andrew did assert the trial
court committed reversible error when it awarded Margaret the $1.25 million judgment on
the basis that the trial court mischaracterized separate property as community property, and
based on the lack of evidence of alter ego and fraud. Here, the damage award can only be
supported by piercing of the corporate veil as to ABNL, Ltd. We are to liberally construe
points of error to fairly and equitably adjudicate the litigants' rights. See Tittizer v. Union
Gas Corp., 171 S.W.3d 857, 863 (Tex. 2005). 
11. We need not decide the factual sufficiency issue raised by Andrew and ABNL, Inc.
on the alter ego and fraud findings, because a ruling in their favor would not afford them any
greater relief than that ordered, a new trial, and a finding overruling the issues would not
preclude a new trial because of the insufficiency of the evidence to support the money
judgment.